## TURTLETAUB v. HARDWARE MUT. CASUALTY CO. et al.

No. 31825.

District Court of New Jersey, Essex County.

Sept. 16, 1948.

George J. Miller, of Trenton, for plaintiff.

Cox & Walburg, of Newark, for defendant Hardware Mut. Casualty Co.

John C. Grimshaw, of Newark, for defendant Citizens. Casualty Co. of New York.

LYONS, J.

This matter, which was originally set down for trial by jury, comes before the Court as a result, of a pre-trial conference, on a stipulation of fact and the testimony of one witness for the plaintiff, together with briefs.

The defendant, Hardware Mutual Casualty Company, a corporation, issued a policy of insurance to the plaintiff, Herman Turtletaub, trading as Star Bottling Company and/or Royal Crown Bottling Co., insuring the plaintiff for any loss " * * * caused by accident and arising out of the ownership, maintenance or use of the automobile," (insuring agreements I), including "use of the automobile for the purposes stated, including the loading and, unloading thereof" (insuring agreements X). The policy further describes the occupation of the named assured as "Mfg. & Distributing Beverage—Own Business" (Declarations, item 1).

The defendant, Citizens Casualty Company of New York,. issued its policy, known as "Manufacturers' and Contractors' Liability Policy," to the plaintiff, in which it agreed with the insured named,

(1. Coverage A—Bodily Injury Liability.)

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom sustained by any person or persons,. caused by accident and arising out of the hazards hereinafter defined." (Insuring Agreements)

(Division 1. Premises—Operations.)

"The ownership, maintenance or use of the premises,. and all operations during Policy Period which are neces-

sary or incidental thereto, including accidents (except accidents due to Misdelivery) which occur after completion or abandonment of operations, and arise out of pickup or delivery operations or the existence of tools, uninstalled equipment and abandoned or unused materials." (Definition of Hazards).

(Division 3. Products.)

"The handling or use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the named insured, if the accident occurs after the insured has relinquished possession thereof to others and away from premises owned, rented or controlled by the insured; and operations covered under Divisions 1 and 6 of the Definition of Hazards (other than pick-up and delivery and the existence of tools, uninstalled equipment and abandoned or unused materials), if the accident occurs after such operations have been completed or abandoned at the place of occurrence thereof and away from such premises." (Definition of Hazards).

"This Policy excludes Coverage:

"(a) under Division 1 of Definition of Hazards (3) while away from the premises insured under this policy for boats or dogs; draft or saddle animals; animal drawn or power driven vehicles, including vehicles attached thereto, or the loading or unloading thereof; vehicles from which merchandise is sold; and any other vehicle while rented to another." (Exclusions)

The facts further disclose that one Jacob Berg, who was employed by the assured, drove the assured's truck to the premises of one of the assured's customers, a Mrs. Esberge, for the purpose of making delivery of cases of soda. The truck was parked in front of these premises and the cases of soda unloaded to the sidewalk and from there hand trucked into the building by a hand truck, which formed part of the equipment of the truck. While the hand truck was in such use inside the building, Mrs. Esberge was injured as a result of the hand truck striking her too. Mrs. Esberge sued the plaintiff herein for damages for the injuries arising out of this incident. A consent judgment in the sum of $300.00 was entered in favor

of Mrs. Esberge against the plaintiff herein. Suit then was started in this Court against both defendants for the purpose of recovering the amount the plaintiff herein was forced to pay as a result of the judgment recovered against him in the suit instituted by Mrs. Esberge.

It is further stipulated that in the event recovery is had against either or both of the defendants, judgment will be in the sum of $300. It is stipulated further that the plaintiff herein has met all the conditions of the policies and that the only matter before this Court is one of interpretation of the policies.

From an examination of the policy issued by the defendant, Citizens Casualty Company of New York, it is apparent that this policy does not cover the plaintiff against hazards resulting from the use of the automobile or the loading or unloading thereof but especially excludes any such coverage. Under the caption "Exclusions" the policy provides as follows:

"This Policy excludes Coverage:

"(a) under Division 1 of the Definition of Hazards

"(3) while away from the premises insured under this policy for boats or dogs; draft or saddle animals; animal drawn or power driven vehicles, including vehicles attached thereto, or the loading or unloading thereof; vehicles from which merchandise is sold; and any other vehicle while rented to another."

The next question for determination is the interpretation of the policy of the defendant, Hardware Mutual Casualty Company. Does this policy cover the plaintiff against the happening of this contingency? To answer this we must decide what is meant by the "loading" and "unloading" clause of the policy.

The cardinal principles pertaining to the construction and interpretation of insurance contracts generally have been fully applied to the interpretation of the "loading and unloading" and there is, of course, no apparent reason why this should not be done. Among such principles are these—that the intentions of the parties should control, that the terms of the clause are to be taken and under-

stood in their plain, ordinary and popular sense and that in determining the intention of the parties, the policy should be considered and construed as a whole by giving effect to the whole instrument and to each of its various parts and provisions.

A statement frequently made by the Courts in determining the scope of the "loading and unloading" clause is that it is impossible to set down any general rules as to what accidents should be covered by the clause, but that each case must be treated separately, according to the facts involved. American Oil & Supply Co. v. United States Casualty Co., 19 N.J.Misc. 7, 18 A.2d 257.

While the Courts are not agreed as to the meaning of the terms "loading" and "unloading" and the cases are in conflict, it appears that the Courts in interpretating these two clauses are guided by one of two theories—the "coming to rest" theory and the "complete operation" theory. 160 A.L.R. 1264.

Under the "coming to rest" doctrine, which gives a narrow and limited interpretation to these clauses ("loading and unloading"), the "unloading" comprises only the actual removing or lifting of the article from the motor vehicle up to the moment where (a) the goods which were taken off the vehicle have actually come to rest and (b) every connection of the motor vehicle with the process of unloading has ceased. 160 A.L.R. 1264.

Under the "complete operation" theory, which gives a broader and more adequate interpretation to the clauses, ("loading and unloading"), the Courts take the view that such clauses cover the entire process involved in the movement of goods from the moment when they are given into the insured's possession until they are turned over at the place of destination to the party to whom delivery is to be made. 160 A.L.R. 1267.

Is this Court free to adopt one or the other of these theories of interpretation, if so which one should be utilized?

My research has enabled me to discover but three cases in New Jersey which bear upon the subject matter here

under discussion. They are: Jackson Floor Covering, Incorporated v. Maryland Cas. Co. of Baltimore, a Corporation, Err. & App., 117 N.J.L. 401, 189 A. 84; Zurich General Accident & Liability Ins. Co., Limited v. American Mutual Liability Ins. Co. of Boston, 118 N.J.L. 317, 192 A. 387 and American Oil & Supply Co. v. United States Casualty Co., 19 N.J.Misc. 7, 18 A.2d 257.

A careful reading of the first two of these three cases will demonstrate that neither the Court of Errors and Appeals in the Jackson Floor Covering case, supra, nor the Supreme Court in the Zurich case, supra, was called upon to nor did they interpret a "loading and unloading" clause.

In the Jackson Floor Covering case the plaintiff, the assured, sold merchandise to a firm having a concession in a market. Its truck, in making delivery, had backed up to the loading platform and its driver was furnished, by an employee at the market, with a hand truck which was used to wheel the merchandise to the stand of the purchaser. While the hand truck was in use a person in the market was injured by it resulting in a judgment which the plaintiff paid and sought to recover under the terms of the policy issued to it by the defendant.

The defendant agreed under its policy to
"Insure * * * (the plaintiff) against the loss from liability imposed by law upon the assured for damages on account of bodily injuries * * * accidentally suffered * * * by person or persons not employed by the assured, while at or about the work of the assured and during the prosecution of said work at the place or places mentioned in item 4(a) of the statements hereof (and elsewhere if caused by employees of the assured engaged as such in said operations and at said places, but who are required in the discharge of their duties to be from time to time at other places) * * *. The policy also provided: 'VI. This policy does not cover * * * any accident caused directly or indirectly by any automobile vehicles or by any draught or driving animal or vehicle owned or used by the assured or by any employee of the assured in charge of any such vehicle or animal, unless such accident

shall occur upon premises owned by or under the control of the assured, or on the public ways at a point immediately adjacent thereto and provided such premises are specifically described in Item IV (a) of the Schedule hereof.' "

Again, 117 N.J.L. at page 402, 189 A. at page 85, Mr. Justice Bodine states the issue as follows:

"Appellant's principal point is that the hand truck involved in the accident was a 'draught vehicle' within the terms of the policy. The learned trial judge properly held otherwise. The words of general coverage are broad."

Nowhere in this case is there to be found any interpretation or semblance of an interpretation of a "loading and unloading" clause.

In the Zurich case, supra, Mr. Justice Heher, writing for the Supreme Court, 118 N.J.L. at page 321, 192 A. at page 389, states:

"We have no occasion to determine whether an accident occurring in the course of the 'loading or unloading' of a vehicle within the policy coverage arises in connection with its 'maintenance, use or operation,' within the intendment of plaintiff's policy. Here the unloading of the merchandise had been completed when the accident occurred. The assured's servant was then engaged in the servicing of the delivered milk upon Borer's premises, an act entirely disconnected from the unloading of the article from the vehicle."

In this case the assured, who was engaged in the milk business, had already delivered its milk to its customer from its truck and was in the act of servicing the delivered milk when the accident occurred. So from these two cases it is apparent that the Courts of this state had not been called upon to interpret and construe the clause under consideration in the one at bar and that as far as New Jersey is concerned the question is one of novel significance.

In the American Oil & Supply Co. case, supra, decided by Judge William A. Smith at the Essex Circuit in 1940, the question of interpretation of this type of clause was squarely presented for determination but it does not appear that he adopted either the "coming to rest" theory or

the "complete operation" doctrine in his construction of the policy. But from the facts in that case it is apparent that there would be liability whether one or the other theories was used. The driver of the assured in that case carried the articles directly from his truck and while depositing them where he was instructed to deposit them by the assured, damaged plates belonging to a customer of the assured. From the facts, as has been pointed out, whether the liberal ("complete operation") or less liberal ("coming to rest") doctrine be employed as the norm of interpretation and construction, coverage would result.

It having been demonstrated, from a discussion of the only three cases in New Jersey touching this problem, that this Court is free to choose one or the other theory in construing a "loading and unloading" clause, the next question for discussion is which view should be adopted.

In construing the policy under consideration, what the Court is trying to do is to spell out the intention of the parties as reflected by their contract. Surely the parties intended coverage of the contingency which happened. The plaintiff declared his business to be the "manufacture and distribution" of soda and the policy covered the ownership, maintenance or use of the automobile; the hand truck involved in the accident was part of the equipment of the automobile and intended for the purpose of trucking soda from the truck to its place of ultimate rest. Unless it is agreed that the phrase "loading and unloading" is a phrase of extension—expanding the expression "use of the truck" somewhat beyond its construction, otherwise, so as to bring within the policy some acts in which the truck in and of itself does not play any part—the expression has no meaning.

From a reading of the policy and the factual situation, I am of the opinion that the intention of the parties to the insurance contract will best be spelled out by applying the more liberal norm of interpretation, that is, "the complete operation" theory and thus give effect to the intention of the parties. Using this norm, I find that the policy of the defendant, Hardware Mutual Casualty Co., a corporation,

afforded plaintiff coverage against the hazard complained of.

In my view the "coming to rest" theory leads to too narrow an interpretation and does not give effect to the intention of the parties as manifest by their contract.

The leading case applying the "coming to rest" doctrine is Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629.

The leading case in which the "complete operation" rule was applied is State ex rel. Butte Brewing Co. v. District Court, 110 Mont. 250, 100 P.2d 932. New York also clearly follows this rule. See B. & D. Motor Lines Inc. v. Citizens Casualty Co., 1943, 181 Misc. 985, 43 N.Y.S.2d 486, affirmed without opinion in 1944, 267 App.Div. 955, 48 N.Y.S.2d 472, leave to appeal denied without opinion in 1944, 268 App. Div. 755, 49 N.Y.S.2d 274.

For a splendid treatise which runs the whole gamut of this issue see the annotation in 160 A.L.R. beginning at page 1259.

Judgment, therefore, in the sum of $300 will be entered in favor of the plaintiff, Herman Turtletaub, trading as Star Bottling Company and/or Royal Crown Bottling Co., and against the defendant, Hardware Mutual Casualty Co., a corporation, and a verdict of no cause for action in favor of the defendant, Citizens Casualty Company of New York, a corporation, and against the plaintiff, Herman Turtletaub, trading as Star Bottling Company and/or Royal Crown Bottling Co.