Argued July '6, affirmed November 16, 1966

# LIBERTY MUTUAL INSURANCE COMPANY
## *v.* TRUCK INSURANCE EXCHANGE,
### CRESSWELL ET AL
420 P. 2d '66

*John L. Luvaas,* Eugene, argued the cause for appellant. On the briefs were Luvaas, Cobb, Richards & Fraser, Eugene.

*Wayne A. Williamson,* Portland, argued the cause for plaintiff and respondent, and *Howard K. Beebe,* Portland, argued the cause for defendants and respondents. On the brief were Mautz, Souther, Spaulding, Kinsey & Williamson and Morrison & Bailey, Portland.

Before MCALLISTER, Chief Justice, and PERRY, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

GOODWIN, J.

This is a suit[①] for contribution between a general liability carrier and a motor-vehicle liability carrier. Truck Insurance Exchange appeals a decree ordering it to pay four fifths of a personal-injury loss settled and paid by Liberty Mutual.

The injury and loss occurred as follows: Robert Gordineer, a log-truck driver employed by Butler Transport, Inc., delivered a load of logs to a pond operated by U. S. Plywood. Allegedly through the negligence of employees of U. S. Plywood, a log fell off the truck while it was being unloaded, and injured Gordineer, who was walking from the cab of the truck to the rear of the load.

Gordineer filed a claim against U. S. Plywood, Liberty Mutual's insured. The cost of settlement was $18,720.13, well within Liberty Mutual's policy limits of $25,000. Truck Insurance, which originally had refused a tendered defense of the claim, had insured Butler Transport as the owner of the truck involved in the accident.

There is no dispute about the facts of the original accident for which the settlement was made. The controversy before this court begins with Liberty Mutual's contention that Truck Insurance was the primary insurer of U. S. Plywood under the "permissive user" clause of the Truck Insurance policy. Truck Insurance, with policy limits of $100,000, was found

---

[①] Carolina Cas. v. Oregon Auto., 242 Or 407, 408 P2d 198 (1965), points out that the remedy is an action at law for money. However, since ORS 16.460 (3) provides that no action or suit shall be dismissed for having been brought on the wrong side of the court, and since all parties to this cause have waived any objection to the cause having been tried as a suit, we will treat the cause as one properly before us for review on the merits.

liable to Liberty Mutual in the sum of $14,976.10. (U. S. Plywood also carried certain "excess" liability coverage, which presented questions that will be considered later.)

If the unloading of the log truck was a "permissive use" of Butler Transport's truck by the U. S. Plywood employees, U. S. Plywood was an "insured" under Butler Transport's Truck Insurance policy. If the unloading operation was not a permissive use of the truck by U. S. Plywood, U. S. Plywood was not an "insured" under the Truck Insurance policy, and Truck Insurance would have a complete defense to any claim for contribution in this case.

■ There is no "loading or unloading" clause in the Truck Insurance policy as there is in some policies. See, e.g., *Gen. Ins. Co. v. Sask. Gov. Ins. Office,* 238 Or 8, 391 P2d 616 (1964). In the *Saskatchewan* case, we held that the lumber company which was scaling logs as they were loaded on the truck of a third party was a permissive "user" of the truck and was thus an "insured" under a motor-vehicle policy covering a loss similar to the one before us. A distinction based upon contract language could be drawn between the two cases. But there is adequate precedent for the view that when the contract is silent on the point loading and unloading is "using" an insured motor vehicle.[2] We hold that the trial court properly treated the pleadings below as a statement of facts which, if true, would make U. S. Plywood an "insured" under the Truck Insurance policy.

■ The next, and more difficult, issue is whether Truck Insurance, by acquiring U. S. Plywood as an

---

[2] For a comprehensive collection of cases on this point, see Annotation, 95 ALR2d 1122 (1964).

insured, thereby lost a specific exclusion written into its policy with Butler Transport. The policy purports to exclude from coverage all employees of "the insured" who may be injured within the scope of their employment. The employee exclusion was abandoned as a defense in the trial court, because the question had been resolved against the motor-vehicle-insurance carrier in *Cimarron Ins. Co. v. Travelers Ins. Co.,* 224 Or 57, 355 P2d 742 (1960). The *Cimarron* rule was reiterated in *Gen. Ins. Co. v. Sask. Gov. Ins. Office,* supra. While there is a split of authority on this point, we adhere to our holdings in *Cimarron* and *Saskatchewan* to the effect that the employee-exclusion clause is not available as a defense when the injured workman is not an employee of the "insured" against whom the claim is being made.

After concluding that the Truck Insurance policy covered U. S. Plywood as an "insured," and that Gordineer's claim was not that of an "employee" of the "insured," the trial court turned its attention to the remaining issue of prorating the loss between the two insurance carriers under the so-called "Lamb-Weston" formula.[9] Inasmuch as Liberty Mutual had policy limits of $25,000, and Truck Insurance had policy limits of $100,000, Liberty Mutual's pro-rata share of the loss was 25/125, or $3,744.03, and Truck Insurance was liable to reimburse Liberty Mutual in the amount of $14,976.12. This disposition of the case was in keeping with the loss-to-limits prorating that has been practiced in this state since the adoption of

[9] Lamb-Weston et al v. Ore. Auto. Ins. Co., 219 Or 110, 341 P2d 110, 346 P2d 643, 76 ALR2d 485 (1959). Where concurrent, applicable policies of insurance contain repugnant "other-insurance" clauses, the repugnant clauses are disregarded and the loss is prorated between the carriers in the ratio that the loss bears to the limits of each of the applicable policies.

the Lamb-Weston formula, but it raised new questions with reference to the excess insurance under the *Saskatchewan* case.

In the management of U. S. Plywood's insurance business, Liberty Mutual was the primary carrier for public-liability insurance, but Liberty Mutual's limits for any one loss were set at $25,000. Additional, or "excess," insurance was provided, with limits up to $10,000,000, by a number of separate contracts with Lloyd's Underwriters. The first "layer" of excess insurance covered U. S. Plywood's public-liability losses, after the exhaustion of Liberty Mutual's limits, up to $1,000,000. The second excess layer covered the risks between $1,000,000 and $6,000,000. The third excess layer covered risks between $6,000,000 and $10,000,000. Each of the Lloyd's policies specifically undertook to insure only those losses that might be payable after the limits of other designated policies had been exhausted. Premiums were paid the excess carriers in light of the relatively remote risks so insured.

Because none of the excess insurance was required to satisfy the Gordineer claim, the trial court refused to consider the excess policies in fixing the formula upon which the loss paid by Liberty Mutual was prorated between Liberty Mutual and Truck Insurance. The result was, as noted, that Liberty Mutual paid one fifth of the loss and Truck Insurance paid four fifths.

Truck Insurance now says that, if prorating is to be the rule, all of U. S. Plywood's insurance should be thrown into the prorating calculation on one "side," with that of Truck Insurance on the other "side," for

a total of $10,125,000. Truck Insurance then argues for the following prorating formula:

| Company | Limits | Fraction of Risk Borne | Approximate Dollar Risk |
|---|---|---|---|
| Liberty Mutual | $ 25,000 | 1/405 | $ 46.20 |
| Truck Insurance | 100,000 | 4/405 | 184.90 |
| First Excess | 1,000,000 | 40/405 | 1,848.80 |
| Second Excess | 5,000,000 | 200/405 | 9,244.00 |
| Third Excess | 4,000,000 | 160/405 | 7,395.20 |

In the case at bar, none of the excess carriers would have been required to pay any part of the loss whether or not Truck Insurance had been brought into the case.[4] The excess carriers, by the terms of their contracts, were not bound to pay anyone anything until Liberty Mutual had exhausted its $25,000, and therefore their policies provided no applicable insurance, and nothing to prorate.

While it is necessary to hold only that the *Saskatchewan* case does not require the excess carriers to prorate in this case, it seems equally clear that the *Saskatchewan* case has left a residue of confusion because it forced excess-insurance carriers to participate in a loss contrary to the terms of their contracts. Under the excess policies in that case, Saskatchewan should have been required to exhaust its $5,000 before its excess carriers could be called upon to participate in the loss. Until the Saskatchewan limits had been exhausted, the excess insurance was not concurrent, applicable insurance.

---

[4] For a case involving some of the same carriers on contracts somewhat similar to those in the *Saskatchewan* case, except that the "excess" insurance would have been penetrated but for the existence of a "stranger" insurance carrier, see, allowing proration, Gilkey v. Andrew Weir Insurance Company, 291 F2d 132 (9th Cir 1961).

· ■ The *Saskatchewan* case, to the extent that it required excess-insurance carriers to pay a part of the loss before the first layer of coverage had been exhausted, is overruled.

The only remaining question is whether we should re-examine *Lamb-Weston* and hold that the two carriers in this case need not prorate the loss in any event.

In the case at bar, Liberty Mutual was a blanket insurer of U. S. Plywood under a comprehensive public-liability-bodily-injury policy. At the same time, Truck Insurance was also an insurer of U. S. Plywood because U. S. Plywood was using a described motor vehicle with the named insured's permission. Truck Insurance and Liberty Mutual therefore covered the identical risk, and each would have been liable for 100 per cent of the loss if it were not for the presence of the other in the case. In all important respects, this was the *Lamb-Weston* situation.

The relevant contract language must be studied in each case, and wherever possible given effect. In the case at bar, Liberty Mutual's contract contained the following condition:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

Truck Insurance, on the other hand, had written the following condition into its policy:

"The insurance afforded by this policy shall not apply to any loss covered by any other insurance but shall be excess insurance over such other insurance."

Thus, Liberty Mutual had engaged, if there is other available insurance, to pay its pro-rata share of any such insured loss. Truck Insurance, meanwhile, had engaged, if there is other available insurance, to pay only that part of any such loss that exceeded the limits of the other collectible insurance. Truck Insurance argues that it has elected in such cases to write only "excess" insurance, and therefore that its insurance coverage cannot be reached until after Liberty Mutual has exhausted its limits. In other words, Truck Insurance argues that its insurance is not applicable. This argument might be persuasive if there were language in either policy which would show which clause should be entitled to preference. Other courts have attempted to work out such a solution. See, e.g., *Continental Cas. Co. v. Zurich Ins. Co.*, 57 Cal2d 27, 366 P2d 455, 17 Cal Rptr 12 (1961).

The difficulty in the instant case is that neither policy discloses a reason for preferring one insurer over another. Each would be liable for the entire loss if the other were not present in the case. Liberty Mutual in such a case agrees, not to pay the entire loss, but only to prorate with other applicable insurance. Truck Insurance claims not to be "applicable", but excess only. We cannot give both policies literal effect, because an agreement to prorate requires a fund with which to prorate, and an agreement to provide excess insurance remains uncertain until a point is fixed for deciding what is excess.

■ Since we cannot give effect to both policies, and since Liberty Mutual would be no more or no less liable than Truck Insurance if both were standing alone,[6] we must treat the two clauses as repugnant.

---

[6] In a similar log-truck-accident setting, but with both the "blanket" liability carrier and the vehicle liability carrier employ-

There are decisions to the effect that the policy containing the pro-rata clause should always bear the whole loss when the other policy contains an excess clause.[©] However, when the two contracts are compared in such cases, the other-insurance clauses frequently are not held to be repugnant. But when repugnancy cannot be resolved by reference to the contracts, the case is a proper case for the equitable rule set forth in *Lamb-Weston*.

Affirmed.

---

ing the excess type of other-insurance clause (instead of our pro-rata v. excess situation) the intermediate court of appeals in California held that both carriers were primarily liable, and required them to prorate the loss under a Lamb-Weston-type formula. See General Insurance Co. of Amer. v. Truck Ins. Exchange, — Cal App2d —, 51 Cal Rptr 462 (1966).

[©] Burcham v. Farmers Insurance Exchange, 255 Iowa 69, 121 NW2d 500 (1963); and Annotation, 76 ALR2d 502 (1961).