INDUSTRIAL UNDERWRITERS IN-
SURANCE COMPANY, a corpo-
ration, Appellant,

v.

P & A CONSTRUCTION COMPANY, a
corporation, and Insurance Company
of North America, Appellees.

No. 9205.

United States Court of Appeals
Tenth Circuit.

Aug. 23, 1967.

Rehearing Denied Oct. 26, 1967.

Clayton B. Pierce, Oklahoma City,
Okl. (John R. Couch, Oklahoma City,
Okl., on the brief), for appellant.

Glenn H. Grubb, Oklahoma City, Okl.
(Monnet, Hayes, Bullis, Grubb & Thomp-
son, Oklahoma City, Okl., of counsel, on
the brief), for appellee, Insurance Co.
of North America.

**314**

Before JONES*, SETH and HICKEY, Circuit Judges.

JONES, Circuit Judge:

This appeal is another of the increasing number of cases involving the question of which, of two or more, insurance companies had liability coverage for an injury to person or property. The facts were stipulated.

On October 28, 1964, P & A Construction Company was engaged in laying a transmission line for and under a contract with Oklahoma Natural Gas Company. In so doing, P & A was using a DC–6 caterpillar tractor, which was equipped with a side-boom or hoist attachment, to unload joints of the pre-coated and wrapped gas pipe from a truck belonging to P & A which had hauled the pipe to the job site. In unloading the pipe from the truck, the operator of the caterpillar tractor, by use of the side-boom or hoist attachment, would pick up a joint of pipe from the truck, the truck would then move forward to the next location, and the tractor operator would lay the joint of pipe down on the ground and release the calipers from the pipe, and would then move the tractor forward to unload another joint of pipe. A joint of pipe had been thus lifted from the truck. The truck had moved forward to the next location. The pipe had been laid on the ground and the calipers had been released. Although this operation completed the unloading of that particular joint of pipe, other joints of pipe remained to be unloaded from the truck. The side-boom was being raised, preparatory to moving the tractor forward to unload another joint of pipe, when the side-boom fell and struck Earl L. Pride. He sustained severe and disabling injuries.

Pride commenced an action against P & A in a state court of Oklahoma. In this action Pride sought to recover from P & A the sum of $142,600.00 for damages for personal injuries arising out of the accident.

The Insurance Company of North America had issued to P & A a policy of automobile liability insurance which insured, among other things, against liability for bodily injury sustained by any person caused by accident and arising out of the ownership, maintenance or use of the truck. The policy stated that "use" of an automobile includes loading and unloading. Industrial Underwriters Insurance Company had issued to P & A a comprehensive liability insurance policy on the caterpillar tractor, agreeing to pay all sums which P & A should become legally obligated to pay as damages because of bodily injury sustained by any person. The policy excluded from its coverage automobile liability which was defined as "legal liability for damages arising out of the ownership, maintenance, use, loading, or unloading of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining."

North America disclaimed liability and refused to defend P & A in the action brought by Pride. Industrial Underwriters undertook the defense under a reservation of rights.

Industrial Underwriters brought a Federal court action against P & A seeking a declaratory judgment as to whether its policy afforded coverage for the liability to Pride. P & A answered, and by leave of court joined North America as a third party defendant. When the action of Pride against P & A was about to come on for trial, a settlement was negotiated with Pride for $60,000 and each insurance company contributed half of the settlement sum. The companies agreed that their rights and obligations should not be prejudiced by the settlement, but should be determined by the Federal court in the de-

---

* Of the Fifth Circuit, sitting by designation.

claratory judgment action. A cross-claim which Pride had filed was dismissed. His motion recited the receipt of satisfaction. Thus the issue in the declaratory judgment action became one between the two insurers to determine which had the coverage to discharge the liability of P & A to Pride.

The district court incorporated the stipulation into its findings. It also found that P & A was an independent contractor and that the premises where it was performing its work were controlled by it. It was determined that the policy of Industrial Underwriters covered the liability for the injury to Pride and that the policy of North America did not. Judgment was entered for North America and relief was denied to Industrial Underwriters. From that judgment Industrial Underwriters has appealed. The judgment is affirmed.

■ This Court, at the outset, had some doubt as to whether the conflicting claims of the two insurance carriers could be resolved in a declaratory judgment action since there was no privity between them and the obligation of each was to their common insured and not to the other. We are now persuaded that the issue is justiciable, and that the conflicting claims present an actual controversy which can be determined by a declaratory judgment. 28 U.S.C.A. § 2201; Rule 57, Fed.Rules Civ.Proc.; West American Insurance Company v. Allstate Insurance Company, 10th Cir. 1961, 295 F.2d 513; United Pacific Insurance Co. v. Ohio Casualty Insurance Co., 9th Cir. 1949, 172 F.2d 836. Cf. St. Paul Mercury Insurance Co. v. Huitt, 6th Cir. 1964, 336 F.2d 37.

■ If North America is to be held liable under its policy affording coverage on the truck, it will be under the extension of the "use" of the truck to unloading. As the underwriting fraternity is accustomed to do, a cryptic phrase is continued in policies long after the courts have pointed out ambiguities and divided upon interpretations. The load-

ing and unloading clause extends the meaning of "use" and enlarges the policy coverage. There are, it seems, two theories of construction of loading and unloading clauses. The narrower rule, the "coming to rest" doctrine, is probably the minority rule. The broader rule, the "complete operation" rule, is probably the majority rule. In the application of the rules by the courts which have adopted and applied them, there are frequent shadings and gradations which obscure as often as they amplify the principles by which they are guided. In this case Federal jurisdiction stems from diversity of citizenship. The law of Oklahoma governs in the determination of the merits of the controversy. Although not decisive of this appeal, we are not wholly without light from an Oklahoma court. In Penley v. Gulf Insurance Co., 414 P.2d 305, the Supreme Court of Oklahoma said:

"The so-called 'loading and unloading' clause in insurance contracts has been frequently considered and construed by the courts. Most authorities agree that the phrase 'including loading and unloading' is a phrase of extension; that it expands the expression 'use' of the truck beyond its connotation otherwise, so as to bring within the policy some acts in which the truck itself does not play any part.

"The courts have generally applied two rules or doctrines when considering situations covered by the 'loading and unloading' clause. See Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716; and 160 A.L.R. 1259–1277. One is the 'coming to rest' doctrine. This view places a narrow construction on said clause and does not hold the insurer liable beyond the point where the goods have been taken off the automobile and have actually come to rest, i. e., when the automobile itself is no longer connected with the process of unloading, and when the articles have started on their

course to be delivered by other power and forces independent of the automobile.

"The other view is the so-called 'complete operation' doctrine, which holds that 'loading and unloading' includes the entire process involved in the movement of the articles from the place where insured's employees find the articles, which are to be moved by truck to the place where the employees of insured turn them over to the party to whom they are to make delivery.

"The parties have not cited, nor have we found, a case that discloses which doctrine this state has adopted or followed. A majority of the states follow the 'complete operation' theory and we believe said rule should be adopted by this Court." 414 P.2d 305, 310.

■ While the foregoing places Oklahoma with those jurisdictions which adhere to the complete operations doctrine and reject the coming to rest doctrine, it does not furnish a solution to the problem. There remains the question as to the application of a related principle sometimes referred to as the causal relation doctrine. In order for coverage to exist under the loading or unloading clause of a policy of liability insurance, it must not only appear that the accident which resulted in an injury occurred during the loading or unloading period but that the accident was causally connected with the loading or unloading. 7 Am.Jur.2d 397, Automobile Insurance § 90. On this, there is general agreement. It is recognized that the causal relation doctrine invokes different rules than the tort principles of proximate cause. St. Paul Mercury Insurance Co. v. Huitt, supra. In the decided cases a number of tests have been applied. It has been held that unloading coverage exists only if the action which resulted in the injury was necessary in order to carry out delivery and was an integral part of the unloading process. Lumbermens Mutual Casualty Co. v. Employers' Liability Assurance Corp., 1st Cir. 1958,

252 F.2d 463; Connecticut Indemnity Co. v. Lee, 1st Cir. 1948, 168 F.2d 420. It has been said that coverage is not present unless there is a direct connection between the accident and the use of the vehicle in the unloading process. Kaufman v. Liberty Mutual Insurance Co., 3rd Cir. 1959, 264 F.2d 863; Entz v. Fidelity & Casualty Company of New York, 64 Cal.2d 379, 50 Cal.Rptr. 190, 412 P.2d 382. In other cases the rule has been announced that unloading coverage is afforded only if the use of the vehicle was an efficient and predominating cause of the injury. Bituminous Casualty Corp. v. Hartford Accident & Indemnity Co., 7th Cir. 1964, 330 F.2d 96; Clark v. Travelers Indemnity Co., 7th Cir. 1963, 313 F.2d 160.

In the Penley case, supra, the Supreme Court of Oklahoma recognized the causal relation doctrine but rejected, apparently, the contention that unloading coverage was dependent upon the use of the vehicle being the efficient, direct and proximate cause of the injury. The court does not announce any test to be used in the application of the causal relation rule. The factual differences between the decided case and the case before this Court would, in any event, prevent its use as a binding precedent in determining the standard to be used under the causal relation doctrine. However, this Court, in a case controlled by principles of Oklahoma law, has recently considered the question of liability under the loading and unloading clause of an automobile liability policy, and has held that there is no liability unless the action out of which the injury arose was a part of, essential to or incidental to the delivery operation. Culp v. Northwestern Pacific Indemnity Co., 10th Cir. 1966, 365 F.2d 474. The falling of the boom, with the resulting injury to Pride, was not a part of, essential to or incidental to the delivery operation.

■ The Supreme Court of Oklahoma, in its Penley opinion, cited with approval and quoted at length from Schmidt v. Utilities Insurance Company, 353 Mo. 213, 182 S.W.2d 181, 154 A.L.R.

1088. The insurance policy there, as here, covered liability "arising out of the ownership, maintenance or use" of the described vehicle with coverage enlarged by a loading and unloading clause. It was there said that the policy would not provide coverage if the injury was directly caused by some independent act or intervening cause wholly disassociated from, independent of and remote from the use of the vehicle. This, we must suppose, is the law of Oklahoma. It clearly appears that the injury to Pride was caused by an act or intervening cause wholly disassociated from and independent from the use of the insured vehicle, and .sufficiently remote as to preclude recovery on the North America policy. Applicable here is a statement of the Seventh Circuit Court of Appeals:

> "The mere fact that the negligent act occurred before the unloading and delivery were completed is of no consequence where such negligence has no relation to and did not arise out of the use of the motor vehicle as defined within the limits of * * * [the] insurance policy provisions." Hartford Accident & Indemnity Co. v. Fireman's Fund Indemnity Co., 7th Cir. 1962, 298 F.2d 423, 426.

The decision of the district court is correct in holding that the policy of Industrial Underwriters insured against the liability of P & A to Pride for the injuries sustained by him, and that the policy of North America did not.

It may be that the decisions of the District of Columbia Circuit Court are not in harmony with that which is here decided. McCloskey and Company v. Allstate Insurance Companies, 1966, 123 U.S.App.D.C. 177, 358 F.2d 544; Indemnity Insurance Co. of North America v. Old Dominion Hoisting Service, 1958, 102 U.S.App.D.C. 141, 251 F.2d 382. If so, the conflict no doubt is occasioned by the application of the laws of different jurisdictions.

The judgment of the district court is affirmed.