The **AMERICAN OIL COMPANY**,
Plaintiff, Appellant,

v.

**HARDWARE MUTUAL CASUALTY COMPANY**, Defendant, Appellee.

No. 7191.

United States Court of Appeals
First Circuit.

Heard Jan. 8, 1969.

Decided March 21, 1969.

Rehearing Denied April 24, 1969.

Raymond A. LaFazia, Providence, R. I., for appellant.

Leonard A. Kiernan, Jr., Providence, R. I., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In this declaratory judgment suit, The American Oil Company (American) seeks, inter alia, to compel Hardware Mutual Casualty Company (Hardware) to take over the defense of a pending negligence action brought against American. The district court, sitting without a jury, found that Hardware had no obligation to assume the defense of the suit and denied the relief sought. The issue raised by American's appeal is whether the trial court erred in finding that the injuries alleged by the plaintiff in the negligence action did not come within the complete operation doctrine. If not, Hardware has no duty to defend the suit.

The facts are not complicated. Hardware issued a policy of insurance to Superior Coal Company, Inc., a Rhode Island corporation, which policy included liability on the latter's motor vehicles. The policy also provided coverage for any person using the named insured's motor vehicles with its permission.[1] Unlike some such policies, there is no stipulation in this one that "use of an automobile" includes the loading and unloading thereof. Nor is the term "use of an automobile" defined or restricted as to Coverage A.

On April 6, 1964, Albert Correia, the driver of a Superior Coal tank truck, was injured when he fell from an oil loading rack at American's terminal in East Providence where his truck was parked, waiting to take on a load of fuel oil. Correia sued American alleging in sub-

---

1. Under Coverage A of the policy, Hardware agrees "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injuries, * * * sustained by any person, caused by occurrence, and arising out of the ownership, maintenance or use of any automobile."

In the omnibus clause, the unqualified word "insured" is defined as including "the named insured and also includes * * * (2) under coverages A and C, any person while using an owned automobile * * * provided the actual use of the automobile is by the named insured or with his permission. * * *"

stance that his injuries were caused by its negligence in failing to maintain its premises in a reasonably safe condition for the use of its business invitees.[2] It is this suit that American asks the court to order Hardware to defend under the terms of the aforesaid policy.[3] Although the accident happened before the actual loading of the truck had begun, American alleges that the loading process had begun and that the accident occurred "in the course of the loading operation." From this it argues that under the complete operation doctrine, it was using Superior Coal's truck within the fair intendment of the policy at the time and place of the accident and therefore Hardware owes it a defense to the Correia suit as an additional insured under the policy.

■■ As so well stated in Allstate Insurance Co. v. Valdez, 190 F.Supp. 893, 894–895 (E.D.Mich.1961):

"It is generally acknowledged that the 'loading and unloading' provision extends liability coverage under a policy beyond the limits circumscribed by the words 'maintenance or use.' Appleman Insurance Law & Practice, Vol. 7, § 4322 (1942). The courts have adopted two views of the scope of insurance coverage under the 'loading and unloading' clause, the so-called 'coming to rest' and 'complete operation' doctrines. Under the former category, 'loading' would cover only the period during which the article has left its place of rest and is in the process of being carried to or placed in the vehicle. * * *

"Broader in scope than the 'coming to rest' theory, the 'complete operation' interpretation covers the entire process involved in the movement of the article, thereby omitting any distinction between 'loading' and preparatory activities * * *."

■ In most jurisdictions the "complete operation" view prevails. Rhode Island has adopted this view in the case of Cinq-Mars v. Travelers Insurance Co., 100 R.I. 603, 218 A.2d 467 (1966) and this being a diversity action, the substantive law of Rhode Island as enunciated in *Cinq-Mars* governs the instant case. After observing that the scope of the complete operation doctrine can only be determined in the factual context of each case, the district court found, among other things, that under the facts of this case the loading operation had indeed begun at the time Correia was injured.[4] Citing the case of Travelers Insurance Co. v. American Fidelity and Casualty Co., 164 F.Supp. 393, 400 (D.Minn. 1958), the court also found that when, as here, "a vehicle is normally used to transport oil and is insured as such, it is a reasonable construction of the policy that the parties intended the term 'use' to include loading and unloading, since these activities are essential to the use

2. As in the instant case, Correia's suit was brought under the diversity statute in the United States District Court in Rhode Island. Among other things, he contends that American was negligent in permitting an accumulation of oil and oily rags to remain on the platform of the loading rack from which he fell.

3. American also prays that Hardware be ordered to otherwise protect and indemnify it up to the amount of its policy limits.

4. The evidence shows that Correia upon arriving at American's terminal, parked his truck next to oil rack No. 5. He then walked back to the dispatcher's office and obtained the appropriate loading tickets, at which time the dispatcher

activated the pump on rack No. 5 so that oil could be pumped into the truck. Thereupon Correia proceeded to rack No. 5, went up to the platform or walking surface of the rack and punched his loading ticket in the meter. As he stood up after punching the meter he fell from the rack. Only the unscrewing of the manhole cover on the truck and the inserting of the oil spout into it remained to be done in order to *complete* the loading process. It also appears that during this loading operation all the equipment used by Correia belonged to American and after he left the dispatcher's office no employees of American were involved. American claims that when Correia parked his truck at the loading rack, the loading operation began.

of the vehicle for the transport of oil." [5] We think that in a liability policy of this kind words such as "use" or "using" have a comprehensive scope. There is adequate precedent for the view that when the policy is silent on the point, loading and unloading is "using" an insured motor vehicle. Liberty Mutual Insurance Co. v. Truck Insurance Exchange, 245 Or. 30, 33, 420 P.2d 66, 68 (1966). Under the facts of this case and construing the policy against the insurer, we cannot say that this construction of the policy was unreasonable.

We come now to the principal issue raised by the appeal, namely, whether the trial court erred in finding that the loading operation was not the efficient and predominant cause of the accident, and therefore not within the policy. In making this finding the court said:

"It is the opinion of this court, in light of the allegations of Mr. Correia's complaint, which mentions nothing about loading, the facts as established in this hearing, and in accord with the decision cited above that the fall and subsequent injuries were caused by an independent factor wholly disassociated with the loading operation and therefore, there is a sufficient absence of causal relations or connection between the accident and the loading operation to allow the injury to come within the coverage provided in the policy in question."

American strongly contends that for it to come within the provisions of the Hardware policy it need only show that its alleged negligence occurred during the loading operation of Superior Coal's vehicle. In other words, it asserts that under the complete operation doctrine all that is required to establish coverage is that the act or omission which resulted in the injury was necessary to carry out the loading or unloading. We do not agree. The pertinent coverage provisions in the policy in the instant case [6] are substantially the same as those in *Cinq-Mars* except that in the latter case there was a stipulation that "use of an automobile includes the loading and unloading thereof." In view of the trial court's construction of the term "use" in the instant case, we do not think that for present purposes this distinction in the two policies is a critical one.

◼ In *Cinq-Mars* the court, applying the complete operation doctrine, held that policies containing loading and unloading clauses extend liability for accidents caused by a third party's negligence *"provided they occurred during the loading and unloading process and were causally connected with it."* (Italics ours) Thus, Rhode Island law requires that the alleged negligence be causally related to and arise out of the loading or unloading. This is the general rule in complete operation jurisdictions. Industrial Underwriters Insurance Co. v. P & A Construction Co., 382 F.2d 313, 316 (10th Cir. 1967). 7 J. Appleman, Insurance Law and Practice § 4322 (1962). But *Cinq-Mars* went even further to specify the criteria of a causal relationship when the negligence was attributable to a third party. The court said: "The necessary causal relationship exists if the accident occurs as the third party is loading or unloading and delivering with the insured's permission and at his direction * * * *"

◼ It has long been settled that the critical question of causal relationship must be determined on the particular facts of each case. Turtletaub v. Hardware Mutual Casualty Co., 62 A.2d 830, 832 (D.Ct.N.J.1948). If the accident arose because of an act or omission removed from or unconnected with the loading process, there is no coverage. For example, an injury sustained by reason of negligent maintenance of the premises where the loading was carried out is covered by the carrier of the person owning or controlling the premises,

---

5. It is Hardware's position that the term "use of an automobile" should not be extended to include loading and unloading when there is no clause in the policy to that effect and therefore American is excluded from coverage.

6. See n. 1, supra.

not the insurer of the truck making a pickup on the premises. Atlantic Mutual Insurance Co. v. Richards, 100 N.J. Super. 180, 241 A.2d 468 (1968). There is no allegation or evidence here that Correia fell because he bent over to put the loading ticket in the meter. The uncontradicted evidence is that there were oily rags and an oil slick on the walking surface of the rack from which Correia fell. This is the negligence that he alleged as the cause of his injuries. Obviously this alleged negligence did not arise out of the use of the Superior Coal truck. Nor can it be said that there was an express or implied permission by Superior Oil which had anything to do with the condition of the platform.

We think there was sufficient evidence to warrant the trial court's finding and conclusion that Correia's injuries were caused by an independent factor wholly disassociated from the loading operation and therefore that American was not covered by the Hardware policy.

Affirmed.

## ON PETITION FOR REHEARING

PER CURIAM.

American Oil Company's extensive petition for rehearing overlooks an important matter. The question is not simply whether the accident occurred, timewise, while the loading was in progress, but whether there was an obligation of an insured in addition to the named insured for which and for whom the insurer had undertaken responsibility. This must be determined both as to the identity of the insured and in terms of the measure of the obligation. Cf. Zavota v. Ocean Accident Co., 408 F.2d 940, 1 Cir., 4/4/69. An insured is defined as one who is using the automobile, and the measure of the obligation, which *Cinq-Mars* described in terms of causation, is whether the liability arose out of the loading or unloading thereof. In *Cinq-Mars* the crane operator was found to be acting under the direction of Perry, the named insured. The question whether American Oil, the putative insured

here, was acting in connection with the condition of its premises "with the [named] insured's permission and at his direction," Cinq-Mars v. Travelers Ins. Co., 1966, 100 R.I. 603, 607, 218 A.2d 467, 470, would be a considerable step beyond *Cinq-Mars*. We will not say that as matter of law the district court was obliged to find what the Rhode Island court described as a causal relationship to the loading of the truck. The petition for rehearing is denied.