**FLORISTS' INSURANCE SERVICE, INC. and Evergreen, Inc., Plaintiffs,**

v.

**GREAT RIVER INSURANCE COMPANY, Defendant.**

**Civil Action No. 3:00CV565LN.**

United States District Court, S.D. Mississippi, Jackson Division.

March 15, 2001.

---

Edward A. Moss, Angela Spivey Carter, Holcomb Dunbar, P.A., Oxford, MS, for Plaintiffs.

Finisse Ewin Henson, III, Upshaw, Williams, Biggers, Beckham & Riddick, Greenwood, MS, for Defendant.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Great River Insurance Company (Great River) for summary judgment and the cross-motion of plaintiffs Florists' Insurance Service, Inc. (Florists) and Evergreen, Inc. for summary judgment. The parties have fully briefed the motions and the court, having considered the parties' memoranda of authorities, together with attachments, concludes that Great River's motion is well taken and should be granted and that the motion of Florists and Evergreen should be denied.

The case involves a question of insurance coverage, and in particular, whether a certain policy of personal automobile liability insurance issued by Great River to Dr. John W. Cook and his wife, Leah, extends coverage to Evergreen as an omnibus insured for liability in connection with an accident that occurred during the effective dates of the policy. The incident at issue occurred on November 28, 1997, when

Leah Cook and a friend went together to the Christmas Tree Sales Lot operated by Evergreen at the Mississippi State fairgrounds in Jackson to purchase Christmas trees for their respective homes.[1] After selecting and paying for their Christmas trees, an employee or employees of Evergreen loaded the trees onto the top of the Cook vehicle, following which Mrs. Cook and her friend left the premises headed home. Soon after leaving the lot, while on the entrance ramp to Interstate 55, one of the Christmas trees fell off the vehicle and rolled into the traveled portion of the interstate. Mrs. Cook and her companion decided that they could not safely remove the tree from the highway, so they returned to the sales lot for help. While they were gone, another vehicle came upon the tree in the roadway and, when the driver took an evasive maneuver to avoid the tree, the vehicle overturned, injuring the driver, Walter Hudson, and killing the passenger, Chet Cole.

Following the accident, Hudson and representatives of the Cole family made a claim against Leah Cook and Evergreen for their alleged negligence in causing the accident and resulting losses. Upon receiving notice of this claim, Evergreen and its liability insurer, Florists,[2] demanded that Great River provide coverage for Evergreen and that it provide Evergreen with a defense in the event suit were to be filed against Evergreen by Hudson and/or the Cole family. Great River declined, taking the position that Evergreen was not an "insured" under its policy.

Eventually, after suit was filed by Hudson and the Cole family in state court, Great River settled the Hudson and Cole family's claim against Leah Cook for $475,000 ($250,000 less than the policy limits), after which Evergreen removed the case to this court. Following removal, Evergreen agreed to pay $1.4 million to settle the case. Just prior to the settlement, however, Florists and Evergreen filed the present action against Great River,[3] seeking a declaratory judgment that Evergreen was an "insured" under Dr. Cook's automobile liability insurance policy for the accident, and alleging bad faith denial of coverage.

■ The issue presented by the parties' cross-motions is whether Evergreen is an omnibus insured under the Great River policy. The parties agree that because this case is before this court pursuant to the court's diversity jurisdiction, then this court is bound to apply Mississippi law. They also agree, however, that there are no Mississippi cases that answer the question presented and that the court must therefore venture an *Erie*-guess as to what the Mississippi Supreme Court would conclude if presented with this issue. They obviously disagree, however, as to the conclusion that court would reach, as each submits that the Mississippi Supreme Court would resolve the issue in its favor. This court has considered the parties' arguments, and after due deliberation, concludes for reasons which follow that the Mississippi Supreme Court would not likely find Evergreen to be an "insured" within the contemplation of the policy for the

---

1. Evergreen is a Minnesota company engaged in the production and sale of Christmas trees and sells trees in, *inter alia,* the state of Mississippi.

2. Evergreen was insured under a liability policy issued by Florists with a policy limit of $1 million per occurrence.

3. Evergreen also sued Kathy Cole and Walter Hudson, but dismissed them from the suit when the settlement was reached.

accident giving rise to Evergreen's putative liability.

Great River's policy, in addition to identifying Dr. Cook and Leah Cook as named insureds, defines "insured" to include "[a]ny person using 'your covered auto.'" Florists and Evergreen contend that in loading the Christmas trees onto the Cook vehicle, Evergreen's employees were "using" the vehicle, with the insured's consent, and that Evergreen is thus clearly an insured for purposes of the liability coverages provided under the Great River policy in connection with the subject accident. In this regard, Evergreen and Florists point out that the term "use" is not defined in Great River's policy, and they thus contend that coverage should be found to extend to Evergreen by reference to well-established rules of insurance contract construction, and in particular, the rules of construing provisions of an insurance contract against the drafter, *see Nationwide Mutual Ins. Co. v. Garriga,* 636 So.2d 658, 662 (Miss.1994), of broadly construing insuring clauses in order to effect coverage, *see Liberty Mutual Fire Ins. Co. v. Canal Ins. Co.,* 177 F.3d 326, 331 (5th Cir.1999), and construing ambiguous provisions in favor of coverage, *see Dennis v. Searle,* 457 So.2d 941, 945 (Miss.1984). In further support of their position, plaintiffs have identified a number of cases which have recognized that the term "use" is not confined to movement on the highway but "extends to any activity involved in the utilization of the covered vehicle in the manner intended or contemplated by the insured." *Mullins v. Federal Dairy Co.,* 568 A.2d 759 (R.I.1990) (concluding that towing of vehicle is contemplated "use"); *Aetna Life & Cas. Co. v. Bulaong,* 218 Conn. 51, 588 A.2d 138 (1991) ("using" included riding on motorcycle as passenger). They have also cited cases in which coverage for "use" of insured vehicles has been held to extend to activities involved in the loading and unloading of insured vehicles. *See Fireman's Fund Ins. Co. v. Canal Ins. Co.,* 411 F.2d 265 (5th Cir.1969); *Red Ball Motor Freight, Inc. v. Employer's Mutual Liab. Ins. Co.,* 189 F.2d 374 (5th Cir.1951); *Crowley's Milk Co. v. American Mut. Liability Ins. Cas. Co.,* 426 F.2d 752 (2d Cir.1970); *American Oil Co. v. Hardware ·Mut. Cas. Co.,* 408 F.2d 1365 (1st Cir.1969); *Mission Ins. Co. v. Aid Ins. Servs.,* 120 Ariz. 220, 222, 585 P.2d 240, 242 (Ariz.1978). However, as Great River points out, all of those cases involved commercial automobile policies, and all but one of those policies had a specific clause that included "loading and unloading" within the definition of "use."[4] In the one case in which that was not so, *American Oil Co. v. Hardware Mutual Casualty Co.,* 408 F.2d 1365 (1st Cir.1969), the court at first recognized that "'[i]t is generally acknowledged that the "loading and unloading" provision extends liability coverage under a policy beyond the limits circumscribed by the words "maintenance

---

**4.** In another case cited by Evergreen and Florists that did not involve a commercial policy, *State Auto. Ins. Assn. v. Kuhfahl,* 364 Pa.Super. 230, 527 A.2d 1039 (Pa.Super.1987), the court held that the subject policy covered an incident in which a child who had just exited the insured vehicle and run into the street was struck by a car. The court held that the causal connection between the insureds' ownership, maintenance or "use" of the vehicle was not so remote from the injuries that the insurer would be relieved of its duty to defend the insureds in a personal injury suit brought by the child's parents. Although the court there did note that it would not construe the term "use" in the policy so narrowly as to not include loading and unloading, the court did not rest its holding on the notion that the child's exiting the vehicle constituted a "use" of the vehicle because it constituted an "unloading" of the vehicle. 364 Pa.Super. at 242, 527 A.2d at 1045.

or use,"'" *id.* (quoting *Allstate Ins. Co. v. Valdez*, 190 F.Supp. 893 (E.D.Mich.1961)), but it went on to conclude that because loading and unloading were essential to the use of the oil transport truck in question, then "use" would be broadly construed to include "loading and unloading." *id.* at 1367–68.[5]

Moreover, in *Fireman's Fund Insurance Co. v. Canal Insurance Co.*, 411 F.2d 265 (5th Cir.1969), the Fifth Circuit indicated that "loading" and "unloading" would not be encompassed by the word "use" in the absence of a policy provision so defining the term. The court stated, "The terms 'loading' and 'unloading,' as used in motor vehicle liability insurance policies, are not words of art. They are used to extend and expand the ordinary meaning of the word 'use,' and should be taken in their plain, ordinary and popular sense and given a meaning that will carry out the intent of the parties to the insurance contract." *Id.* at 268.

▇ Consistent with this principle of striving to give effect to the intent of the parties, Great River maintains that whether "use" may reasonably be construed to encompass the activities of "loading" and/or "unloading" depends on the status of the insured and the expectations and intentions of the contracting parties in view of that status. More to the point, it contends that "use" may reasonably be defined to include "loading" and "unloading" in a commercial setting in which the nature of the insured's business is such that loading and unloading of an insured

vehicle is a necessary component of the insured's "use" of the vehicle because "loading" and "unloading" in that context would fit well within the contracting parties' expectation of what is to be covered. It maintains, however, that when viewed from the standpoint of the contracting parties' expectations and intentions, one could not reasonably conclude that the term "use" in a personal automobile liability policy would extend coverage to a commercial enterprise engaged in the business of selling products to consumers merely because that commercial enterprise may, as a means of furthering its sales, load the sold goods onto or into a customer's vehicle. The court agrees.

In *Travelers Insurance Co. v. Safeguard Insurance Co.*, 346 Mass. 622, 195 N.E.2d 86 (1964), a case similar to the case at bar, a supermarket's bag boy injured a customer when he accidentally shut the door on the customer's hand while loading the customer's bags of groceries into the customer's car. The court rejected an argument that the supermarket and bag boy were omnibus insureds under the customer's automobile liability insurance policy, stating,

In numerous cases, this court has said that loading and unloading a motor vehicle is a use or operation thereof. *Cook v. Crowell*, 273 Mass. 356, 358, 173 N.E. 587, *Diggins v. Theroux*, 314 Mass. 735, 737, 51 N.E.2d 425, *Nichols & Company, Inc. v. The Travelers Insurance Company*, 343 Mass. 494, 497, 179 N.E.2d 593. However, in each of these cases the "operated" vehicle was being used in a regular course of solicit-

---

**5.** The court stated,

[W]hen, as here, 'a vehicle is normally used to transport oil and is insured as such, it is a reasonable construction of the policy that the parties intended the term "use" to include loading and unloading, since these activities are essential to the use of the vehicle for the transport of oil.' We think that in a liability policy of this kind words

such as 'use' or 'using' have a comprehensive scope. There is adequate precedent for the view that when the policy is silent on the point, loading and unloading is 'using' an insured motor vehicle. *Liberty Mutual Insurance Co. v. Truck Insurance Exchange*, 245 Or. 30, 33, 420 P.2d 66, 68 (1966). *American Oil Co. v. Hardware Mut. Cas. Co.*, 408 F.2d 1365, 1367–68.

ing trade or delivering merchandise. In the *Diggins* case, *supra*, it was noted that the placing of the merchandise "upon the truck was an incident in the operation of the truck for transportation of merchandise." In the instant case, there was no evidence that Petro's automobile was involved in a course of making deliveries. *Cf. Cook v. Crowell, supra.* Nor was there any permission given by him to the employee which was causally related to the operation of Petro's vehicle. If what the employee did was a "use," it was too casual and too remote from the operation of the vehicle to qualify Consumer's as a insured. *See Nichols & Company, Inc. v. [Travelers Ins. Co., 343 Mass. 494, 179 N.E.2d 593], Travelers Insurance Company v. Safeguard Insurance Company, at 346 Mass. 622, 624, 195 N.E.2d 86.*

*Id.* at 624, 195 N.E.2d at 88.

■ Florists and Evergreen submit that to it would be improper to evaluate the meaning of terms in an insurance policy by reference to the type of policy involved, or more pertinently, to whether the insured is a business or person. But to not account for the insured's status when assessing whether a particular interpretation of a term is reasonable is to not fully account for the parties' expectations and intentions, for it must be recognized that parties in commercial settings will often have different expectations and intentions regarding coverage than parties in a personal setting, and that potential "uses" contemplated by the contracting parties may well depend on the context. This is simply a recognition of the principle that words in a contract should be "given a meaning that will carry out the intent of the parties to the insurance contract." *Fireman's Fund*, 411 F.2d at 268. It is thus entirely reasonable to take into account the circumstances of the parties, and specifically their likely expectations and intentions, when determining what the parties meant by a given term.

And, as Great River points out, virtually all of the cases in which "loading" and "unloading" have been found to be within the meaning of the term "use" in motor vehicle liability policies have either involved a policy with an express provision including those terms, or have involved commercial insurance wherein transport of goods is the purpose of the vehicle in question, thereby requiring "loading" and "unloading" in order for the vehicle to carry out its intended use by the owner—a risk contemplated by the parties to the contract.[6] In the court's opinion, it is not reasonable to conclude that a person insuring his own personal automobile intends to provide coverage to every commercial enterprise which might negligently load goods into or onto his vehicle.

Accordingly, it is ordered that Great River's motion for summary judgment is granted, and Florists and Evergreen's cross-motion is denied.

A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

**6.** In *U.S. Steel Corp. v. Transport Indemnity Co.*, 241 Cal.App.2d 461, 465, 50 Cal.Rptr. 576, 579 (1966), the court recognized that there was a split of authority on the question of whether a policy providing coverage to persons "using" an automobile but which does not expressly include "loading and unloading" includes liability for injuries caused in the loading and unloading process, but that court noted that in California, in the loading or unloading of a truck, the negligent party is "using" the truck and is an additional insured even though the policy does not expressly include loading or unloading. Notably, that case involved a policy issued to a commercial carrier.