Argued and submitted February 25, 1999, affirmed February 9, petition for review denied May 31, 2000 (330 Or 361)

# MAYNARD C. WALLETT,
## *Appellant,*

*v.*

# s. Frank THOMPSON,
## Superintendent,
## Oregon State Penitentiary,
## *Respondent.*

## (97C-11408; CA A101605)

998 P2d 1273

David B. Kuhns argued the cause and filed the brief for appellant.

Richard D. Wasserman, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before De Muniz, Presiding Judge, and Haselton and Armstrong, Judges.

HASELTON, J.

Armstrong, J., dissenting.

**HASELTON, J.**

Plaintiff, an inmate at the Oregon State Penitentiary (OSP), appeals from a judgment dismissing his petition for a writ of habeas corpus. ORS 34.310. He asserts that he is entitled to credit on his Oregon sentence for time served in federal custody on convictions for crimes he committed while on temporary leave during the pendency of his Oregon sentence. We conclude that plaintiff was "voluntarily absent" from Oregon custody, ORS 137.370(3) (1977), and, thus, was not entitled to credit for time spent in federal custody. Consequently, we affirm.

In October 1978, plaintiff was convicted of robbery in the first degree, ORS 164.415, which he committed on or about July 26, 1978. Thereafter, plaintiff was sentenced to the legal and physical custody of the Oregon Department of Corrections (DOC) for a period not to exceed 20 years. The DOC established a statutory good time date of November 22, 1991.

On September 16, 1983, the DOC granted plaintiff temporary transitional leave for the purpose of integrating into the community before his parole release date of January 23, 1984. On December 27, 1983, pursuant to the conditions of his temporary leave, plaintiff was to report to a parole officer to sign his parole papers. When he arrived at the parole office, and before he signed the papers, federal agents arrested him on a federal robbery charge, a crime he committed while on temporary leave. Plaintiff pleaded guilty to that charge, was sentenced to 20 years in the federal penitentiary, and was immediately transported to Leavenworth, Kansas, where he began serving that sentence.

On December 30, 1983, the Oregon Board of Parole and Post-Prison Supervision (Board) suspended plaintiff's parole on his Oregon sentence. On October 25, 1984, DOC issued a detainer on plaintiff. On May 19, 1996, 12 years after plaintiff began serving his federal sentence, he was released from federal prison, and, pursuant to the detainer lodged by the DOC, he was returned to the OSP. Upon his return, the DOC established a new good time date of May 21, 2004, and a maximum retention date of January 20, 2011.

On April 23, 1997, plaintiff petitioned for a writ of habeas corpus, asserting that (1) his Oregon sentence continued to run while he was in federal custody; and (2) when his time in federal custody was credited against his Oregon sentence, that sentence had been fully served. Defendant filed a return, and plaintiff filed a replication. Defendant moved to dismiss on the ground that plaintiff had failed to state a claim for habeas relief. The trial court denied that motion. After a trial in January 1998, the court denied the writ and entered a judgment of dismissal. This appeal followed.

■ On appeal, plaintiff asserts that the trial court's denial of his writ was erroneous. His principal contention is, as it was at trial, that ORS 137.370, which allows for the computation of terms of imprisonment in Oregon penal and correctional institutions, provides grounds for the granting of his writ. Specifically, plaintiff argues that OAR 291-100-013(2)(d) and (e) (1981)[1] and the 1981 version of ORS 137.370[2] apply, and that under those provisions, his sentence "resumed running when it was officially confirmed that plaintiff was in custody 'even though he[ ] may be serving a sentence in another institution.'" Alternatively, plaintiff asserts that if, as the state contends, the *1977* version of ORS 137.370 applies, then he nonetheless is entitled to relief. We first consider plaintiff's reliance on OAR 291-100-013 (1981) and the 1981 version of ORS 137.370. The trial court concluded, and we agree, that plaintiff's reliance on those provisions is

---

[1] OAR 291-100-013(2) (1981) provided, in part:

"(d) Once an inmate has been sentenced, the sentence will begin to run and continue to run unless the inmate escapes. Upon escape, the time will stop running.

"(e) The sentence of a person who escaped on or after November 1, 1981, will resume running when it is officially confirmed that the inmate is in custody even though he/she may be serving a sentence in another institution or county jail."

[2] ORS 137.370 (1981) provided, in part, that:

"(2) [W]hen a person is sentenced to imprisonment in the custody of the Department of Corrections, for the purpose of computing the amount of sentence served the term of confinement includes only:

"(a) The time that the person is confined by any authority after the arrest for the crime for which the sentence is imposed; and

"(b) The time that the person is authorized by the Corrections Division to spend outside a confinement facility, in a program conducted by or for the Corrections Division."

misplaced. Because plaintiff committed the Oregon crime for which he is incarcerated in 1978, our analysis is governed by the laws then in effect. *See State v. Isom,* 313 Or 391, 395, 837 P2d 491 (1992) ("[T]he legislature intends that Oregon courts sentence criminal defendants under the statutory scheme in force when a particular criminal act was committed."); *State v. Flowers,* 136 Or App 555, 558, 902 P2d 624 (1995), *rev den* 324 Or 513 (1997) (same). The 1981 rule was promulgated in response to the 1981 amendments to ORS 137.370. Neither was in effect at the time of plaintiff's crimes.

Thus, plaintiff's entitlement to relief depends on the proper construction and application of the 1977 version of ORS 137.370(3), which was in effect when plaintiff committed his crime. That statute provided, in part:

> "Except as provided in ORS 421.120 and 421.122, no time during which a person sentenced to imprisonment in the penitentiary or the correctional institution is *voluntarily absent* from the penitentiary or correctional institution can be counted as a part of the term for which such person was sentenced." ORS 137.370(3) (1977) (emphasis added).

Our analysis and the parties' arguments focus on the proper construction of that statute, and particularly the meaning of "voluntarily absent"—*i.e.,* whether plaintiff's absence from the OSP while serving a federal sentence was "voluntary" within the meaning of ORS 137.370(3) (1977).

■■ Under the familiar *PGE* framework, we begin with the text and context of the statute. Context includes prior versions and succeeding changes to the statute, *Krieger v. Just,* 319 Or 328, 336, 876 P2d 754 (1994), as well as prior judicial interpretations of the relevant language. *Stephens v. Bohlman,* 314 Or 344, 350 n 6, 838 P2d 600 (1992).

■ In *Strong v. Gladden,* 225 Or 345, 350, 358 P2d 520 (1961), the court construed an earlier version of ORS 137.370, which also included the phrase "voluntarily absent." There, the court considered whether an inmate who spent time away from the penitentiary, and in the custody of Multnomah County during the pendency of post-conviction proceedings, was "voluntarily absent." The then-operative version of ORS 137.370 provided:

"When a person is sentenced to imprisonment in the penitentiary or the correctional institution, his term of confinement therein commences from the day of his delivery at the penitentiary or correctional institution to the proper officer thereof, and *no time during which such person is voluntarily absent therefrom can be counted as a part of the term for which such person was sentenced.*" Or Laws 1955, ch 660, § 15 (emphasis added).

The court concluded that the inmate was not "voluntarily absent" for purposes of the statute:

"The words 'voluntarily absent' refer to a prisoner who is absent from the penitentiary unlawfully.

"* * * * *

"[ORS 138.620, pertaining to post-conviction proceedings,] seems quite clear that whenever a prisoner as plaintiff is ordered to be present in court he is lawfully absent from the penitentiary whether the court acts on a motion of the plaintiff or on its own motion. Nowhere in the statutes relating to post-conviction relief do we find any implication that the execution of the sentence is stayed while such proceedings are pending, such as is provided in ORS 138.130 pending an appeal to this court from a judgment of conviction." *Strong,* 225 Or at 350-51.

Despite *Strong*'s construction of the statute, the state argues that the "rule of prior construction," *see, e.g., Stephens,* 314 Or at 350 n 6, does not apply because post-*Strong* amendments to ORS 137.370 "necessarily changed the proper interpretation of the phrase 'voluntarily absent.'" We disagree. We presume that the legislature, in enacting amendments to a statute, is aware of the Supreme Court's prior decisions interpreting that statute, *see State v. Clevenger,* 297 Or 234, 244, 683, P2d 1360 (1984), and we will not presume that amendments change the meaning of preexisting language further than is expressly declared or necessarily implied. *See Jones v. General Motors Corp.,* 325 Or 404, 414-15, 939 P2d 608 (1997). The post-*Strong* amendments to ORS 137.370 did not alter the essential "voluntarily absent" language. Rather, those amendments excepted certain inmate educational and employment programs conducted

outside the penitentiary from the general provision that "voluntary absences" suspend the running of a sentence.[3] Thus, those amendments amplified and clarified that specific types of absences from the penitentiary were not "voluntary." They did not alter *Strong*'s basic construction that to be "voluntarily absent" an inmate must be "unlawfully absent." *See Strong*, 225 Or at 350.

■　　Thus, the issue reduces to the meaning of "unlawfully absent." The parties offer two contending constructions. Plaintiff asserts that his absence from Oregon custody was not "voluntary" in that his arrest by federal officials in his parole officer's office was "beyond his control—as was his placement in a federal prison in Kansas." Thus, he argues, he performed no "affirmative action" and was not "voluntarily absent" from Oregon custody. The state counters that plaintiff's absence was the result of his own unlawful conduct—*i.e.,* robbery committed while on temporary leave that resulted in his arrest and incarceration by federal authorities—and that he was, thus, unlawfully absent. Consequently, he was "voluntarily absent."

We agree with the state. Although plaintiff was in federal custody—and, conversely, absent from state custody—pursuant to a lawful judgment, the federal conviction and judgment were the direct consequence of plaintiff's own unlawful conduct while serving his Oregon sentence. That is, the essential and precipitating cause of plaintiff's absence from Oregon custody was his own voluntary and unlawful conduct. In that regard, plaintiff's situation is analogous to that of an inmate who escaped from Oregon custody, committed a crime in another state while on escape status, was convicted and incarcerated in the other state, and then sought to credit the time served in the other state against the Oregon sentence from which he had escaped. If plaintiff's construction were correct, then that hypothetical inmate would be entitled to credit for time served in the other state. In both the hypothetical and this case, if plaintiff's construction were endorsed, then Oregon's valid penal interest in full service of

---

[3] The applicable section of ORS 137.370 was amended three times between *Strong* and the relevant time frame. *See* Or Laws 1965, ch 463, § 19; Or Laws 1967, ch 232, § 2; Or Laws 1973, ch 562, § 2.

the Oregon sentence would be frustrated by the inmate-plaintiff's voluntary and unlawful conduct. We thus reject that construction.

■ We conclude that, for purposes of ORS 137.370(3) (1977), when a person is absent from Oregon custody because of unlawful conduct committed during the term of an Oregon sentence, that person is "voluntarily absent." Plaintiff was not entitled to a credit for his time in federal custody.[4]

Affirmed.

**ARMSTRONG, J.,** dissenting.

I dissent from the majority's decision to affirm the dismissal of plaintiff's habeas corpus petition. The majority concludes that plaintiff was "voluntarily absent" from state custody while he served time in federal prison and, therefore, that he was not entitled to credit on his state sentence for his time in federal custody. The majority reaches that conclusion by misconstruing the Supreme Court's test for voluntary absence under ORS 137.370(3) (1977). Because I conclude that the proper test for voluntary absence turns on whether the state permitted the absence and because the state did so here, I would hold that plaintiff was not voluntarily absent from state custody while he served his federal sentence. Consequently, I would hold that he is entitled to habeas corpus relief.

The majority correctly cites *Strong v. Gladden*, 225 Or 345, 358 P2d 520 (1961), for the proposition that the term "voluntarily absent" in ORS 137.370(3) (1977) means "unlawfully absent." 165 Or App at 369-71 (citing *Strong*, 225 Or at 350-51). By giving the term that meaning, the court made the statute focus on whether the state has permitted a prisoner to be absent from state custody and not on whether the prisoner's volitional acts have caused him to be absent.

Plaintiff committed the federal crimes for which he was incarcerated while he was on transitional leave as a prelude to his release from prison on parole. Federal officials

---

[1] Plaintiff asserts that "[t]here was nothing more that he could have done" to submit to the authority of the DOC. He is wrong: He could have conducted himself in a lawful manner while on leave.

arrested plaintiff for those crimes when plaintiff appeared at the state parole office to sign documents that would have placed him on parole. The state necessarily cooperated in that arrest, because, without state cooperation, the federal officials could not have been present to arrest plaintiff when he appeared in the state office. Instead of permitting the federal arrest, the state had the authority to take plaintiff into custody and to return him to prison to continue serving his state sentence, on the ground that his commission of the federal crimes made it inappropriate to release him on parole from his state sentence. *See* OAR 291-115-043 (1983). Had that occurred, the federal government would have been required to use the Agreement on Detainers to obtain custody of plaintiff from the state in order to prosecute him for the federal crimes, with the result that plaintiff would have been entitled to complete service of his state sentence before beginning to serve his federal sentence. *See* ORS 135.775, Arts II, IV & V.

While the crimes that led to plaintiff's incarceration in federal prison and, hence, his absence from state prison were his volitional acts, the state made a choice to permit him to serve the federal sentence before requiring him to complete his state sentence. Because the state chose to allow plaintiff to be in federal rather than state custody, it is not correct to conclude, as the majority does, that plaintiff was unlawfully absent from state custody while he was in federal custody.

The majority claims that plaintiff's situation is indistinguishable from one in which a prisoner escapes from state custody, commits a crime in another state, and serves prison time for that crime in the other state before being returned to Oregon to complete his Oregon sentence. 165 Or App at 371-72. There is, in fact, a difference between the majority's hypothetical case and this one. In the former, the state would play no role in the decision whether the escapee would serve prison time in the other state before completing his Oregon sentence. His absence from Oregon custody while serving time in the other state truly would be unlawful from Oregon's perspective, because he would remain an escapee from that custody until returned to Oregon. Here, in contrast, the state

chose to permit plaintiff to serve time in federal prison before completing his state sentence. That is a crucial distinction.

In fact, the proper analogy to this case is one in which a state prisoner commits a federal crime, such as conspiracy to smuggle drugs into the United States, while incarcerated in an Oregon prison. The prisoner is then transferred by the state to federal custody for trial pursuant to the Agreement on Detainers. In that circumstance, the prisoner's unlawful acts would lead to his absence from state custody while participating as a defendant in the federal trial, but his absence from state custody while doing that would be completely lawful. Therefore, he would be entitled to credit on his state sentence for his time in federal custody notwithstanding the fact that his absence from state custody was the product of his unlawful acts. *See* ORS 135.775, Art V(f) (1983). So, too, is plaintiff entitled to credit on his state sentence for the time that he spent in federal custody. Because that credit would entitle him to release from state custody, I respectfully dissent from the majority's decision to affirm the dismissal of plaintiff's habeas corpus petition.