Argued and submitted April 24; resubmitted en banc November 9, affirmed December 20, 2000

TRUS JOIST MACMILLAN,
an Idaho corporation,
and Trus Joist MacMillan,
a Limited Partnership,
*Appellants,*

*v.*

JOHN DEERE INSURANCE COMPANY,
*Respondent,*

*and*

NEWTON & SONS, INC.;
Dallas Wayne Newton;
and Jo Jean Shew, Personal Representative of
the Estate of Earl Eugene Shew, Deceased,
*Defendants.*

(97 12 173; CA A104636)

15 P3d 995

Scott L. Garland argued the cause for appellants. With him on the briefs were E. Joseph Dean and Stoel Rives LLP.

I. Franklin Hunsaker argued the cause for respondent. With him on the brief were Ronald E. Bailey, Beth R. Skillern, and Bullivant Houser Bailey.

Before Deits, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Kistler, and Brewer, Judges.

LANDAU, J.

Brewer, J., dissenting.

## LANDAU, J.

At issue in this case is whether defendant John Deere Insurance Company (John Deere) has a duty to defend plaintiff Trus Joist MacMillan (Trus Joist),[1] whose employee assisted in the loading of a truck that John Deere insured. The trial court held that, under Oregon law, the duty to defend applies only to persons who "used" the insured's truck, and that, by merely assisting in the loading of the insured's truck, the Trus Joist employee did not "use" it. We affirm.

The relevant facts are undisputed. Trus Joist manufactures and sells wood floor joists. A customer purchased several bundles of joists. Newton & Sons, Inc. (Newton), arrived to pick up the joists and transport them to the customer. The parties stipulated that Newton did not work for Trus Joist and that Trus Joist did not hire Newton to transport the joists.

Newton is insured by John Deere. The policy defines an "insured" to include permissive users, with specified exceptions:

"1. WHO IS AN INSURED

"The following are 'insureds':

"a. You for any covered 'auto.'

"b. Anyone else while using with your permission a covered 'auto' you own, hire or borrow, except:

"* * * * *

"(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered 'auto.' "

One of Trus Joist's employees helped Newton to load and secure several bundles of joists onto Newton's tractor-trailer. Some hours later, as the Newton truck proceeded to

---

[1] Plaintiffs are Trus Joist MacMillan, an Idaho corporation, and Trus Joist MacMillan, a limited partnership. For ease of reference, we refer to the two as a single entity.

its destination, it veered across the center lane of the highway, spilled its load, and hit an oncoming car, killing its driver, Earl Shew. Shew's estate filed a wrongful death action against Newton. Newton then filed a third-party complaint against Trus Joist, alleging that the accident occurred in part because the load of joists had shifted due to Trus Joist's negligence in assisting with the loading. Trus Joist then tendered the defense of the action to Newton's insurer, John Deere, arguing that it was entitled to defense as permissive users of Newton's truck. John Deere denied coverage and refused to defend Trus Joist in the Shew action. Trus Joist then initiated this action for a declaration that John Deere is obligated to defend it in the Shew action.

John Deere moved for summary judgment, relying on the policy provision that excluded coverage for persons "moving property to or from" a covered vehicle. Trus Joist filed a cross-motion for summary judgment, arguing that the exclusion does not apply and that, in any event it is "trumped" by ORS 806.080, which requires all motor vehicle liability policies to include coverage for permissive users of an insured vehicle. According to Trus Joist, by helping Newton to load its truck, the Trus Joist employee became a permissive user of the Newton truck. The trial court held that, even if the Trus Joist employee "used" the Newton truck within the meaning of the term in ORS 806.080, that use ceased long before the accident that resulted in Shew's death. Accordingly, the trial court entered summary judgment for John Deere.

On appeal, Trus Joist argues that the trial court erred in allowing John Deere's summary judgment motion and in denying the cross-motion. According to Trus Joist, the policy exclusion does not apply, because it excludes coverage only while property is being loaded and unloaded, and, in this case, the accident did not occur until long after. In the alternative, Trus Joist argues that, regardless of any exclusions in John Deere's policy, ORS 806.080 mandates coverage and creates a duty to defend, because its employee "used" Newton's covered vehicle when he assisted Newton in loading it. In support of its argument, Trus Joist places particular reliance on *Liberty Mut. Ins. v. Truck Ins.*, 245 Or 30, 420 P2d 66 (1966), which it reads as holding that the loading of a

truck amounts to using the truck for purposes of Oregon insurance law.

In response, John Deere begins by arguing that the policy exclusion for loading and unloading covered vehicles plainly does apply: Trus Joist can claim coverage only to the extent that it was a permissive user, and the basis for its claim of permissive use—loading and unloading of the vehicle—is expressly excluded. John Deere then contends that ORS 806.080 does not impose a duty to defend for either of two reasons. First, it argues that the statute applies only to motor vehicle liability insurance policies, while the policy issued to Newton was for a "motor truck." Second, John Deere argues that, even if the statute applies to commercial motor carrier policies, it does not create a duty to defend in this case because, by merely assisting Newton in loading Newton's truck, Trus Joist's employee did not "use" the truck within the meaning of the statute.

■ We begin with the parties' arguments about the effect of the policy exclusion. The policy defines as an insured anyone "while using" a covered vehicle, excluding anyone "while moving property to and from" a covered vehicle. Trus Joist argues that the exclusion does not apply, because the Shew accident occurred after the loading and unloading. As John Deere complains, however, the argument cannot be reconciled with the language of the policy. That policy provides coverage for permissive users of a covered vehicle. Trus Joist contends that its employee used the Newton truck when he assisted in the loading of that truck. But loading the truck is expressly excluded from coverage. Thus, the very act on which Trus Joist relies to demonstrate its permissive use is one that the policy excludes from coverage. We conclude that the policy unambiguously excluded from coverage the act of loading the Newton truck.

■ We turn to the question whether ORS 806.080 creates a duty to defend notwithstanding the policy exclusion. That statute provides, in part:

"(1) A motor vehicle liability insurance policy used to comply with financial responsibility requirements * * * must meet all of the following requirements:

"* * * * *

"(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. The policy must include in its coverage all persons who, with the consent of the named insured, use the motor vehicles insured under the policy * * *."

■■ John Deere's first argument is that the statute does not apply, because the statute applies only to liability insurance for "motor vehicles," not "motor trucks." We disagree. ORS 801.355 provides that, for the purposes of ORS chapters 801 through 826, the term "motor truck" means "a motor vehicle that is primarily designed or used for carrying loads other than passengers." Thus, the statute defines a "motor truck" as a species of "motor vehicle."

John Deere's second argument is that, in any event, the statute does not create a duty to defend, because Trus Joist's employee did not "use" the Newton truck. With that argument we agree. The statute requires coverage for persons who, with permission, "use" the named insured's vehicle. That means that the person must actually put the vehicle to his or her own use. In this case, there is no evidence that Trus Joist's employee did that.

As with the construction of statutes generally, we begin with the text of the provisions of insurance statutes, in their context, to determine the intended meaning of the wording in dispute. *Marcilionis v. Farmers Ins. Co.*, 318 Or 640, 645, 871 P2d 470 (1994). The ordinary meaning of the verb "use" is

"to put into action or service : have recourse to or enjoyment of : EMPLOY * * * to carry out a purpose or action by means of : make instrumental to an end or process : apply to advantage : turn to account : UTILIZE * * *."

*Webster's Third New Int'l Dictionary*, 2523-24 (unabridged ed 1993). To "employ," in turn, means "to make use of * * * to use or occupy advantageously * * *." *Id*. at 743. And to "utilize" means "to make useful : turn to profitable account or use." *Id*. at 2525. Putting aside the inherently tautological

nature of this definitional exercise, the point is clear that "use" connotes acting in a way that serves some purpose of the user. *See Couch on Insurance 3d* § 111:35 (1997) (" 'Use' is to be given its ordinary meaning. It denotes the employment of the automobile for some purpose of the user.") (footnote omitted).

When Trus Joist's employee assisted in the loading of Newton's truck, he did not "use" the truck. He did not put the truck into action, employ it, apply it to his or his employer's advantage, or utilize it. The parties, in fact, stipulated that Trus Joist did not hire the truck and that Newton did not work for Trus Joist. Trus Joist's employee simply offered assistance to Newton in *its* loading of *its* truck. Newton may have been using the truck, but Trus Joist's employee was not. That only makes sense. *See State v. Steele*, 33 Or App 491, 499, 577 P2d 524 (1978) (statutes must be read "with the saving grace of common sense"). A grocery store clerk who helps a customer load his or her car with groceries is not using the customer's car. The customer is.

*Liberty Mut. Ins.* is not to the contrary. To begin with, the issue in that case was the meaning of an insurance policy, not ORS 806.080. In any event, the case is distinguishable on its facts. In *Liberty Mut. Ins.*, U. S. Plywood purchased a load of logs and had them shipped by Butler Transport. The driver was injured when unloading the logs at U. S. Plywood's site. The driver brought an Employers' Liability Act action against U. S. Plywood. After that claim was settled, U. S. Plywood sought coverage from Butler's motor vehicle liability insurer for liability incurred as a result of the use of the truck. The court held that, in unloading its logs from the truck, U. S. Plywood was "using" the truck. 245 Or at 33. The court's holding is unremarkable, given that, in unloading its own logs from the truck, U. S. Plywood was employing the truck to its advantage.

In this case, in contrast, Trus Joist sold the joists and had no further interest in them and had no interest in how they were transported to whoever purchased them, whether they were shipped by Newton's truck or by any other means. Thus, there is no evidence that Trus Joist derived any benefit

from offering gratuitous assistance to Newton. In no reasonable sense of the term can it be said that Trus Joist's employee "used" Newton's truck.

 The dissent arrives at a different conclusion, but by ignoring the ordinary meaning of the relevant statutory wording. According to the dissent, to determine the meaning of ORS 806.080, we should consult the John Deere policy and not a dictionary of ordinary meanings. That is not the way interpretation of the Oregon insurance code works, however. The focus of statutory construction is the intentions of the legislature, not the intentions of the parties to a private insurance policy. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). There is a presumption that the legislature intended the ordinary meaning of terms to apply, as generally reflected in common dictionary definitions. *See, e.g., Marcilionis*, 318 Or at 644-45 (insurance statutes to be interpreted in accordance with "natural, plain, and ordinary meaning" of their terms). To the extent that the policy in this case reflects a different meaning of the term "use," it simply demonstrates that the parties intended something other than the ordinary meaning of the term. It says nothing about what the legislature intended ORS 806.080 to mean.

The dissent similarly appeals to what it characterizes as the majority rule in the case law of other jurisdictions as to the meaning of the "use" of a motor vehicle. Again, the dissent ignores the proper approach to the construction of statutes, which is to ascertain what the Oregon legislature intended the disputed wording to mean. Those intentions are not determined merely by counting cases from other jurisdictions. This is not a case in which the Oregon legislature enacted a uniform law. *See, e.g., Security Bank v. Chiapuzio*, 304 Or 438, 445 n 6, 747 P2d 335 (1987) ("the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts"). Nor is it a case in which the Oregon statute is based on the wording of a statute from another jurisdiction, in which case pre-existing decisions from that jurisdiction may become relevant. *See, e.g., Pamplin v. Victoria*, 319 Or 429, 433, 877 P2d 1196 (1994) (pre-existing federal court decisions construing federal rule of civil procedure relevant to interpretation of identical

Oregon rule based on the federal counterpart). In the absence of any such evidence that the Oregon legislature intended to follow decisions of other jurisdictions, the fact that some of those decisions construe similar language differently provides little, if any, assistance to us in determining what the Oregon legislature intended.

We conclude that the trial court did not err in entering summary judgment in favor of defendant John Deere.

Affirmed.

**BREWER, J.,** dissenting.

The dispositive issue in this case is whether the Financial Responsibility Law (FRL) requires John Deere to provide a defense to Trus Joist. In my view, the majority has given the wrong answer to that question. Trus Joist's employees did, in fact, use Newton's truck when they loaded and secured joists on it to be transported on the public highways. Therefore, the FRL required coverage for that use under John Deere's policy.

To explain why, I begin with a step in the analysis that the majority omits, namely, whether loading and unloading constituted use of the truck under the policy. The majority does not consider that issue because it decides that loading and unloading were excluded by the policy. I agree with that conclusion. However, the process of statutory construction in which the majority has engaged involves more than a trip to the dictionary. The ordinary meaning of terms used in insurance statutes is, or at least ought to be, informed by what insurers and insureds believe that those terms commonly mean in their particular corner of the world.

The omnibus clause of John Deere's policy defines an "insured" as

"b. Anyone * * * while *using* with [the policyholder's] permission a covered 'auto' you own, hire or borrow except:

"* * * * *

"(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving

property to or from a covered 'auto.' " (Emphasis added.)

The policy does not define the terms "use" or "using." The plain fact, however, is that "use," for purposes of the omnibus clause in a liability insurance policy, has a broad legal meaning that includes the loading and unloading of vehicles. *Liberty Mut. Ins. v. Truck Ins.*, 245 Or 30, 33, 420 P2d 66 (1966). In *Liberty Mut. Ins.*, a log truck driver had been injured when a log fell off the truck he was operating while it was being unloaded. The driver brought a negligence action against the employer of the workers who unloaded the truck. The employer's general liability carrier paid the claim and then brought an action against the driver's employer's motor vehicle liability insurer for contribution. The motor vehicle liability insurer argued that its insured's employees were permissive users of the truck while they were unloading it. The Supreme Court agreed, holding that there "is adequate precedent for the view that when the contract is silent on the point loading and unloading is 'using' an insured motor vehicle." *Id.* That construction also is entirely consistent with the dictionary meaning of "use." To unload is to "use" a vehicle, because it involves the employment or utilization of the vehicle by removing cargo from it.

Nor is the meaning of "use" under the policy disputed seriously among the parties. John Deere's counsel conceded at trial that loading an insured vehicle constitutes a permissive use under its policy. The trial court also arrived at the same conclusion, and it is fully supported by the Supreme Court's decision in *Liberty Mut. Ins.* The majority attempts to confine the holding of that case to its own understanding of the dictionary meaning of "use." However, the majority is simply unable to distinguish *Liberty Mut. Ins.* in any meaningful way. The fact that the general liability carrier's insured had *purchased* the logs it unloaded did not make it more a user of the truck than was the case here, where Trus Joist had *sold* the joists that it loaded on Newton's truck. In either case, the operation of loading or unloading was, in some respect, to the user's advantage or presumably it would not have been performed. There is no logical reason to measure the *degree* or *existence* of a user's economic interest in the

product that it loads or unloads from a vehicle in deciding whether it has used the vehicle.

The majority's view has been rejected by the substantial majority of courts that have considered whether loading and unloading constitute use of a vehicle for purposes of omnibus liability coverage. *See, e.g., United States Steel Corporation v. Transport Indemnity Co.*, 241 Cal App 2d 461, 50 Cal Rptr 576 (1966) (in the loading and unloading of a truck, the negligent party is using the truck, and thus is an additional insured, even though the policy does not expressly include loading or unloading activities); *Fid. & Cas. Co. v. North Carolina Farm Bureau Mut. Ins. Co.*, 16 NC App 194, 192 SE2d 113 (1972) (it is a matter of normal construction to hold that "use," within terms of omnibus clause, includes loading and unloading of a motor vehicle, especially when the vehicle is a truck designed to transport goods); *see also Bellafronte v. General Motors Corp.*, 151 NJ Super 377, 376 A2d 1294 (1977); *Travelers Insurance Co. v. American Fidelity & Cas. Co.*, 164 F Supp 393 (D Minn 1958); *D'Aquilla Bros. Contracting Co., Inc. v. Hartford Acc. & Ind. Co.*, 22 Misc 2d 733, 193 NYS 2d 502 (1959).

The minority view seems to be that loading and unloading are merely incidental parts of overall use and therefore do not fall within omnibus coverage. *See, e.g., Travelers Ins. Co. v. Buckeye Union Cas. Co.*, 172 Ohio St 507, 178 NE2d 792 (1961) (bulk oil tank employee who spilled oil on truck driver was not an insured under truck policy even though engaged in a loading operation). However, no case that we have found follows the majority's reasoning; in fact, the Ohio court took precisely the opposite view, concluding that the bulk fuel employee did not use the truck because he was not acting for the benefit of the *owner of the truck. Id.* at 514. Neither that distinction nor the majority's, however, is persuasive. There is nothing inherent in the meaning of "use" that requires a user to have any particular economic relationship to either the insured vehicle or the product transported upon it.

It is also significant that the policy purports to exclude loading and unloading activities from coverage. If loading were not a use, there would be no reason to exclude it

expressly from liability coverage. It would, instead, be excluded by definition alone. In fact, the exclusion that the majority upholds was engrafted in motor vehicle liability policies in order to reduce the scope of coverage, in light of the fact that use includes loading and unloading operations. *See Protective Ins. Co. v. Coca-Cola Bottling Co.*, 423 NE 2d 656, 660 (Ind App 1981). Thus, it is readily apparent that, in the ordinary parlance of liability insurance coverage, Trus Joist used Newton's truck when its employees loaded and secured the joists onto it.

With the ordinary meaning of use in mind, I turn to the decisive issue on appeal: whether the FRL requires coverage in this case, irrespective of the policy exclusion. Exclusions from coverage must be given effect "absent a conflict with the FRL." *Harlan v. Valley Ins. Co.*, 128 Or App 128, 134, 875 P2d 471, *rev den* 319 Or 407 (1994). The policy provides for its conformation by self-amendment to the extent that it does not otherwise comply with the FRL:

> "The certificate of the policy, as proof of financial responsibility under the provisions of any * * * State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby[.]"

Trus Joist contends that its employees were permissive users of the insured vehicle and that the exclusion was prohibited by ORS 806.080, which provides, in part:

> "(1) A motor vehicle liability insurance policy used to comply with financial responsibility requirements under ORS 806.060 must meet all of the following requirements:
>
> "* * * * *
>
> "(b) It must insure the named insured and all other persons insured under the terms of the policy against loss from the liabilities imposed by law for damages arising out of the ownership, operation, use or maintenance of those motor vehicles by persons insured under the policy. *The policy must include in its coverage all persons who, with the consent of the named insured, use the motor vehicles insured*

*under the policy*, except for any person specifically excluded from coverage under ORS 742.450." (Emphasis added.)

ORS 806.080(1)(b) was amended in 1991 to require coverage for "all persons who, with the consent of the named insured, *use* the motor vehicle insured under the policy * * *." ORS 806.080(1)(b) (as amended by Oregon Laws 1991, chapter 768, section 8) (emphasis added). Trus Joist contends that the statute requires coverage despite the exclusion, because its employee, with the consent of Newton, used the insured truck by loading it.

We interpret words of common usage found in insurance statutes in accordance with their ordinary meaning. *Marcilionis v. Farmers Ins. Co.*, 318 Or 640, 645, 871 P2d 470 (1994). The term "use" is one of common understanding and, when not otherwise defined in an insurance statute, should be given its ordinary meaning. *Carrigan v. State Farm Mutual Auto. Ins. Co.*, 326 Or 97, 101-02, 949 P2d 705 (1997). The majority purports to follow those principles, but it overlooks a fundamental synergy between the construction of statutes and insurance policies. At the first levels of statutory construction and insurance policy construction our missions are comparable: We seek to ascertain the ordinary meaning of words. Loading a motor vehicle is a "use" in the ordinary sense contemplated by the omnibus provision of John Deere's policy. *Liberty Mut. Ins.*, 245 Or at 33. Nothing in the text or context of the statute suggests that the legislature intended a more restrictive meaning for the term. *See Wallett v. Thompson*, 165 Or App 365, 370, 998 P2d 1273 (2000) (in enacting amendments to statutes, the legislature is considered to be aware of the Supreme Court's decisions).

John Deere cites a number of cases that it asserts support a narrower meaning of "use" under the statute—a meaning limited to "normal driving activities." However, none of those cases actually construed the term, much less restricted it. One case on which John Deere relies does, however, deserve brief discussion. In *Shell Oil Co. v. Employers Ins. of Wausau*, 69 Or App 179, 684 P2d 622 (1984), the omnibus provision for permissive users contained in the defendant's liability policy was virtually identical to the policy language here. We held there that a former version of the FRL

did not require coverage under the policy for Trus Joist's vehicle-loading activities. *Id.* at 183-84. What John Deere overlooks is that *Shell Oil* was decided when the FRL did not require coverage for *all* permissive users but rather only for " 'the named insured *and all other persons insured under the terms of the policy.*' " *Id.* at 183 n 7 (quoting *former* ORS 486.011, *repealed by* Or Laws 1983, ch 338, § 978) (emphasis in original). As noted, the legislature amended ORS 806.080(1)(b) in 1991 to require, without regard to the language of the policy, coverage for "all persons who, with the consent of the named insured, use the motor vehicle insured under the policy * * *." Therefore, *Shell Oil* does not inform, much less govern, our inquiry.

John Deere ultimately argues that Trus Joist's claim is not within the class of those with which the FRL is concerned. John Deere asserts that the FRL is designed to assure a minimum level of compensation for motor vehicle accident victims, rather than to provide for the "transfer or allocation of liability" for such compensation. ORS 806.080(1) prescribes mandatory coverage for motor vehicle liability policies "used to comply with financial responsibility requirements under ORS 806.060 * * *." ORS 806.060 provides, in part:

> "A person who is required to comply with the financial responsibility requirements of this state *must be able to respond in damages*, in amounts required under this section, for liability on account of accidents arising out of the ownership, operation, maintenance or use of motor vehicles and must establish that ability by one of the methods required by this section. All of the following apply to the financial responsibility requirements of this state:
>
> "(1) To meet the financial responsibility requirements, *a person must be able to respond in damages* in amounts not less than those established under the payment schedule under ORS 806.070.
>
> "(2) A person may only comply with the financial responsibility requirements of this state by establishing the *required ability to respond in damages* in one of the following ways:
>
> "(a) Obtaining a motor vehicle liability policy meeting the requirements under ORS 806.080 that will provide at

least minimum limits necessary to pay amounts established under the payment schedule under ORS 806.070." (Emphasis added.)

John Deere's arguments reduce to the proposition that the FRL is designed to ensure a minimum level of compensation for motor vehicle accident victims rather than to provide for the "transfer or allocation of liability" for such compensation. Although that may be true, it does not follow that John Deere owes no defense to Trus Joist. We are concerned not with what the parties believe the statute *should* say but, rather, with what it actually does say. ORS 174.010. Likewise, we are not concerned here with allocating the ultimate risk of loss between John Deere and any liability carrier that directly insured Trus Joist's activities. What is at stake here is a far more important question, namely, whether the FRL requires minimum liability limits covering those who load and secure cargo that is transported on our public highways. Because the ordinary meaning of the term "use" encompasses the loading of a vehicle, and because the claim made by Newton against Trus Joist arises from that use, the exclusion on which John Deere relies is in direct conflict with ORS 806.080(1)(b) and, thus, cannot be given effect. *See Dowdy v. Allstate Insurance* Co., 68 Or App 709, 717, 685 P2d 444, *rev den* 298 Or 172 (1984) (where exclusion is contrary to FRL coverage requirement, "the policy * * * 'automatically provide[s] such coverage, regardless of its terms' "). Therefore, the trial court mistakenly concluded that John Deere owed no duty to defend the third-party complaint filed by Newton against Trus Joist and, in turn, erred by granting John Deere's motion for summary judgment and by denying Trus Joist's cross-motion for partial summary judgment. The majority errs by concluding otherwise.

I respectfully dissent.

Armstrong and Wollheim, JJ., join in this dissent.