Argued and submitted November 3, 2022, affirmed April 5, petition for review denied September 14, 2023 (371 Or 333)

Steven CANTU,
*Plaintiff-Respondent,*

*v.*

PROGRESSIVE CLASSIC
INSURANCE COMPANY,
a foreign corporation,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CV53678; A175784

528 P3d 1187

In this automobile insurance case, defendant appeals the trial court's entry of summary judgment in favor of plaintiff. While plaintiff was riding a motorcycle purchased eight days prior, plaintiff was severely injured by a negligent underinsured driver. Defendant denied underinsured motorist insurance benefits because the policy required insured vehicles to have at least four wheels. The trial court concluded that the policy provided less favorable coverage than required by statute to plaintiff and entered summary judgment on that basis. *Held*: The Court of Appeals construed the particular provision of the underinsured motorist statutes to mean that the statutory definition of "vehicle" is the applicable definition. Defendant's insurance policy therefore provided less favorable coverage to plaintiff than required by statute. The trial court did not err in so concluding.

Affirmed.

Bruce C. Hamlin, Judge pro tempore.

James B. Rich argued the cause for appellant. Also on the briefs was Harris, Wyatt & Amala, LLC.

Derek Larwick argued the cause for respondent. Also on the brief was Larwick Law Firm, PC.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGÁN, J.**

In this civil appeal, defendant, an insurance company, contests the trial court's entry of summary judgment in favor of plaintiff. In one assignment of error, defendant argues that the trial court misconstrued ORS 742.504 as requiring defendant to provide underinsured motorist coverage under an automobile policy for plaintiff's injuries arising from a crash involving plaintiff's motorcycle purchased just eight days prior to the accident. As such, this case deals with vehicles that were recently acquired by an insured person and have not yet been scheduled in an insurance policy. The sole question in this insurance coverage case is whether defendant is required by statute to provide coverage for "newly acquired vehicles," such as plaintiff's motorcycle, notwithstanding an insurance policy term that excluded transportation devices with less than four wheels. The parties stipulated to the relevant material facts, and each moved for summary judgment. The trial court granted plaintiff's motion and denied defendant's motion. We conclude that the trial court did not err and, therefore, affirm.

The operative facts are undisputed. Plaintiff was insured by defendant for three automobiles. The policy at issue did not list any motorcycles on the declaration page. The policy also included underinsured motorist coverage and provided that "additional autos" would be covered by that underinsured motorist coverage for up to 30 days after acquisition by an insured. About eight days after purchasing a motorcycle, plaintiff was severely injured when another driver negligently made a left turn in front of plaintiff. As a result of the injuries, plaintiff sought damages in excess of the liability limits of the other driver. Defendant admitted the motorcycle was "newly acquired," but denied underinsured motorist bodily injury benefits based on specific terms of the insurance policy that excluded vehicles with less than four wheels. Plaintiff filed this action, alleging that pursuant to various portions of Oregon's statutory uninsured motorist (UM) coverages, ORS 742.500 - 742.510, defendant was required to provide bodily injury coverage on the "newly acquired vehicle"—*viz.*, the motorcycle purchased eight days before the collision.

Both parties filed motions for summary judgment, each contending that, as applied to the undisputed facts, ORS 742.504(2)(d)(A)[1] dictates the outcome they each sought. According to plaintiff, the statutory-minimum coverages prescribed by the UM laws require that defendant extend the existing UM coverage to newly acquired vehicles, and the statutory definition of "vehicle" as provided in ORS 742.504(2)(m)[2] includes a motorcycle. Defendant argued that, as written, ORS 742.504(2)(d)(A) does not incorporate the paragraph (m) definition of vehicle, and thus leaves it to the contracting parties to define the relevant meaning.

The trial court granted summary judgment to plaintiff, after concluding that the relevant definitions in the insurance policy impermissibly provided "underinsured motorist benefits that [are] less favorable to the insured than the terms of ORS 742.504 require." The trial court denied defendant's motion for summary judgment on the same issue.

On appeal, defendant largely reprises the argument it made below. Specifically, defendant contends that the trial court erred by construing ORS 742.504(2)(d)(A) as requiring the newly acquired vehicle provision to include the motorcycle, when the policy itself did not cover any motorcycles. Moreover, defendant argues that by "pluck[ing]" the definition of "motor vehicle" or "vehicle" from other portions of the UM statute and using it in the newly acquired vehicle provision, the trial court committed legal error.

Although this appeal reaches us following the grant of summary judgment in favor of plaintiff, the question in this case reduces to the meaning of the statute, and thus is

---

[1] ORS 742.504(2) provides, in part:

"(d) 'Insured vehicle,' except as provided in paragraph (e) of this provision, means:

"(A) The vehicle described in the policy or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy, insured under the public liability provisions of the policy[.]"

[2] ORS 742.504(2)(m) provides:

"'Vehicle' means every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, but does not include devices moved by human power or used exclusively upon stationary rails or tracks."

one of statutory construction. *See Bialostosky v. Cummings*, 319 Or App 352, 356, 511 P3d 31 (2022) (stating approach to review where material facts uncontested and outcome turned on meaning of statute). Our goal in interpreting a statute is to discern the intent of the legislature in enacting the statute. *See* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). "[T]here is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (citations and internal quotation marks omitted). We examine the text of the statute in its context. *See Stevens v. Czerniak,* 336 Or 392, 401, 84 P3d 140 (2004) ("[T]ext should not be read in isolation but must be considered in context," which "includes other provisions of the same statute, the session laws, and related statutes."). We may consult legislative history in addition to text and context, "where that legislative history appears useful to the court's analysis." *Gaines,* 346 Or at 172.

In Oregon, minimum UM coverages are prescribed by statute. *See* ORS 742.500 - 742.510. Insurance policy provisions in the written contract that are "less favorable in any respect to the insured or the beneficiary" are "unenforceable." ORS 742.504; *see also Vega v. Farmers Ins. Co. of Oregon*, 323 Or 291, 302-03, 918 P2d 95 (1996) (so stating). A policy may exclude or soften "an authorized term that disfavors insureds" or add a term that is "neutral or favors insureds" without violating ORS 742.504. *Vega*, 323 Or at 302. Thus, we must determine whether the trial court committed legal error by concluding that the statutory definition of "vehicle" applied in this instance because defendant's policy provision provided benefits "less favorable" than required by statute.

When assessing the meaning of a statutory insurance term, our focus is on the intention of the legislature, discerned through the words selected by the legislature—not the parties contracting for insurance. *Trus Joist MacMillan v. John Deere Ins. Co.*, 171 Or App 476, 483, 15 P3d 995 (2000), *rev den*, 332 Or 305 (2001). We do not look to the insurance policy when determining the meaning of

statutory insurance terms, we look first to the terms as they are defined by the legislature, and in the absence of definition, those terms are presumed to carry a "natural, plain, and ordinary meaning." *Id.*; *see also DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016) ("When the legislature has not defined a word or a phrase, we assume, at least initially, that the word or phrase has its plain, natural, and ordinary meaning.").

ORS 742.504(2)(d), which contains an exception to the definition of "insured vehicle," indicates that when the legislature wants to specifically exclude something from a definition, it has the express tools to do so. It did so in this instance by excluding trailers from the definition of insured vehicle. ORS 742.504(2)(e). A trailer, under common meanings of the word, is generally a "vehicle" under the definition in paragraph (m) because a trailer is a "device" that "in, upon, or by which" "property" "may be transported or drawn upon a public highway," and is not generally "moved by human power." That point lends some credence to plaintiff's contention that the paragraph (m) definition of "vehicle" is applicable to the provision at issue in this case. In other words, the text suggests that the legislature understood that the broad definition of "vehicle" applied to paragraph (d) and decided to exclude trailers from the mandated UM coverage. The corollary of that broad definition and exception formula is that the legislature likely intended the paragraph (m) definition of vehicle to be applicable within the definition of "insured vehicle."

Finally, drilling down to subparagraph (A), we consider the text and structure of that provision. The first clause, "[t]he vehicle described in the policy," suggests that the contracting parties are empowered to negotiate which vehicles will be included in the UM policy. As used in this statute, "the" serves to limit the noun "vehicle" to those described in the policy. However, that does not imply that the statutory definition of the noun "vehicle" is inapplicable. The second clause, "or a newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy" suggests that the contracting parties are free to define what "newly acquired or substitute

vehicle" means for the UM policy. The notion that the parties are free to decide *which* vehicles are covered, or whether they are "newly acquired" or "substitute" does not compel the conclusion that it is left to the parties to decide whether or not a transportation device is a vehicle, however.

The remainder of the definitional provisions in ORS 742.504(2) use the term "vehicle" in a way that is consistent with the way the term is used in paragraph (d). "Although, in the abstract, there is nothing that precludes the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently." *State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011); *see also Village at Main Street Phase II v. Dept. of Rev.*, 356 Or 164, 175, 339 P3d 428 (2014) (applying assumption of consistent meaning at textual analysis step of statutory construction). There is no evidence that suggests that the legislature intended a different meaning for the word "vehicle" when defining "insured vehicle" than it did when defining "hit-and-run vehicle," "phantom vehicle," "stolen vehicle," or "uninsured vehicle." ORS 742.504(2)(b)-(l). Absent evidence of that intention, there is no reason to discount the ordinary assumption that paragraph (m)'s definition of "vehicle" applies equally to all of the ORS 742.504(2) definitions that use that word.

The construction of ORS 742.504(2)(d)(A) in a manner that permits the contracting parties to define the particulars of when a statutorily defined vehicle is "newly acquired" or "substitute" also aligns with the legislative mandate to "ascertain and declare, what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted." ORS 174.010. Construing the provision at issue to allow the parties to ignore the statutory definition of "vehicle" requires us to either read in a term like "except as provided" or "notwithstanding," or to omit the legislatively provided definition. Neither construction comports with the approach to statutory construction in Oregon.

Turning to the context of the statutory provision at issue and beginning with the required performance of an

insurer, ORS 742.504(1)(a),[3] it is clear that when the legislature perceives a conflict between the UM laws and other applicable laws, it possesses the textual tools to resolve those conflicts. For example, the phrase "[n]otwithstanding ORS 30.260 to ORS 30.300, the insurer will pay all sums," means that the legislature intended for the UM laws to apply even in instances where the tortfeasor was a public body, and specifically noted that intention through express language. ORS 742.504(1)(a). It follows that had the legislature intended for the paragraph (m) definition of vehicle to be inapplicable to the definition of "insured vehicle," the legislature could have signaled that intention by using words such as "notwithstanding paragraph (m), 'insured vehicle,' means":[4] The legislature did not.

The broader purpose manifest in the UM law is to "place the injured policyholder in the same position as if the tortfeasor had had liability insurance." *Vogelin v. American Family Mutual Ins. Co.*, 346 Or 490, 501, 213 P3d 1216 (2009). That is reflected in part by the statutory default for symmetrical UM and bodily injury liability coverages. ORS 742.502(2)(a). Unless a "named insured" elects in writing to lower limits, the limits of UM coverage and bodily injury liability coverage must be the same. *Id.* That contextual clue helps shed light on the probable legislative intention underpinning the phrase "newly acquired or substitute vehicle, as each of those terms is defined in the public liability coverage of the policy," by indicating that the legislature desired to maintain symmetrical coverage between UM and bodily injury liability when an insured acquires a vehicle or replaces a scheduled vehicle. That implies that "newly

---

[3] ORS 742.504(1)(a) provides, in part:

"Notwithstanding ORS 30.260 to 30.300, the insurer will pay all sums that the insured or the heirs or legal representative of the insured is legally entitled to recover as damages from the owner or operator of an uninsured vehicle because of bodily injury sustained by the insured caused by accident and arising out of the ownership, maintenance or use of the uninsured vehicle."

[4] Moreover, several definitional provisions in the broader Oregon Revised Statutes preface the meanings assigned by stating "unless context requires otherwise." *See* ORS 72A.1030(1); ORS 133.005; ORS 419A.004; ORS 656.003. Although such practice is by no means universal, nor is the absence of such a phrase dispositive, it does provide a contextual clue that the definitions specifically supplied by the legislature for the UM laws were intended to be the applicable definitions.

acquired" or "substitute" refers to a question of *when*, and *for how long*, a different owned vehicle is covered by UM and bodily injury liability coverages, not necessarily a question of *what kind of transportation device constitutes a vehicle*. It is perfectly logical for the legislature to permit the contracting parties to determine when a "vehicle" qualifies as "newly acquired" or "substitute," how long that status persists, and other neutral considerations in that vein, without also ceding the definition of vehicle to the parties.

We are unconvinced that the legislative directive to define "newly acquired" or "substitute" in the policy extends as far as also defining "vehicle" in a way that is inconsistent with paragraph (m). When the text of paragraph (d) is considered in the contextual setting amongst ORS 742.504, the remainder of the UM statutes, and related statutes, it is apparent that the legislature intended the term "vehicle" to carry the definition the legislature provided in paragraph (m).[5] The trial court did not err by concluding that the paragraph (m) definition of vehicle was the applicable definition of that word.

Notwithstanding our conclusion that the statutory definition in paragraph (m) is applicable to the definition of "insured vehicle," the UM statutes do not require any particular language in the insurance contract. *See* ORS 742.504 ("However, nothing contained in this section requires the insurer to reproduce in the policy the particular language of any of the following provisions."). That is, parties such as plaintiff and defendant may draft an insurance contract with their own language so long as the result is not "less favorable in any respect to the insured or the beneficiary" than is required by statute. *Id*.

The insurance policy provisions at issue here provide:

"1.  'Additional auto' means an auto you become the owner of during the policy period that does not permanently replace an auto shown on the declarations page if:

---

[5] We have reviewed the legislative history associated with Oregon's enactment of UM laws; however, we have not found any pertinent discussion regarding the scope of UM coverage or a meaning of vehicle different than provided in ORS 742.504(m).

"a.   we insure all other autos you own;

"b.   the additional auto is not covered by any other insurance policy;

"c.   you notify us within 30 days of becoming the owner of the additional auto; and

"d.   you pay any additional premium due.

"An additional auto will have the broadest coverage we provide for any auto shown on the declarations page. If you ask us to insure an additional auto more than 30 days after you become the owner, any coverage we provide will begin at the time you request coverage.

"2.   'Auto' means a land motor vehicle:

"a.   of the private passenger, pickup body, or cargo van type;

"b.   designed for operation principally upon public roads;

"c.   with at least four wheels; and

"d.   with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

"However, 'auto' does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

"* * * * *

"5.   'Covered auto' means:

"a.   any auto or trailer shown on the declarations page for the coverages applicable to that auto or trailer;

"b.   any additional auto;

"c.   any replacement auto; or

"d.   a trailer owned by you."

Although the record does not describe exactly what model or configuration of motorcycle plaintiff was operating when he was injured, we can infer that it did not have "at least four wheels," and was therefore excluded as a "covered auto" under the terms of the policy.

We assess whether a UM policy provides "less favorable" terms to an insured "not by a direct comparison

between the challenged provision with an individual statutory provision," rather, we compare the coverages provided in the policy against those required by statute. *Vega*, 323 Or at 299. As hypothesized in *Vega*, because the challenged policy provision bears a clear relationship to a statutory provision, the distinction between the statutory provision and the coverage arising therefrom is inconsequential. Put differently,

> "[i]f a policy contains a challenged provision that is 'less favorable to the insured' than one of the statutory provisions, it takes no great leap of imagination to conclude that, at least in that respect, the coverage in the policy also is less favorable than the coverage in a policy comprised of the statutory provisions."

*Id.* at 299-300. In the instant case, it poses little challenge to conclude that defendant's policy, with respect to the definition of "additional auto," excludes vehicles that are otherwise included within the coverages prescribed by statute. A motorcycle, under a common understanding of the term, is a "device" "upon or by which any person" "may be transported *** upon a public highway" and is not "moved by human power" or "used exclusively upon stationary rails or tracks." ORS 742.504(2)(m); *see also Webster's Third New Int'l Dictionary* 1476 (unabridged ed 2002) (motorcycle is "a 2-wheeled tandem automotive vehicle having 1 or 2 riding saddles and sometimes having a 3d wheel for the support of a sidecar"). A motorcycle is therefore a vehicle within the definition provided by the legislature.

Thus, we must conclude that, by limiting the definition of "auto" in the policy to devices having "at least four wheels," defendant impermissibly provided less favorable coverage to plaintiff than that required by law. The trial court did not err by so concluding, or by granting summary judgment to plaintiff on that basis.

Affirmed.